The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Thomas Dale POPE, Defendant-Appellee.

No. 84SA223.

Supreme Court of Colorado, En Banc.

Sept. 15, 1986.

Alexander M. Hunter, Dist. Atty., Richard F. Good, Deputy Dist. Atty., Boulder, for plaintiff-appellant.

Miller, Gray & Hale, P.C., Daniel C. Hale, Boulder, for defendant-appellee.

ERICKSON, Justice.

This is an appeal by the prosecution from the dismissal of charges against the defendant for possession, sale, and conspiracy to sell cocaine, a schedule II controlled substance. Section 18–18–105, 8 C.R.S.

(1985 Supp.). The trial court found that the failure of police to preserve for testing an apparently empty chemists' tray on which screening tests had been conducted deprived the defendant of due process of law and required dismissal. We reverse and remand with directions to reinstate the charges and for further proceedings consistent with this opinion.

Following a two-week undercover investigation, Officer Robert Meals of the Boulder County Police Department met with David Fleishman at a Boulder restaurant on January 31, 1984, to negotiate for the purchase of pound quantities of cocaine. A jeep driven by a man Fleishman identified as "the source" drove through the restaurant parking lot and returned a short time later. The defendant was later identified as Fleishman's "source." Fleishman offered Meals a sample from a plastic bag that contained approximately one-quarter ounce of what appeared to be cocaine. Meals took approximately one one-hundredth of a gram of the substance, separated it into two grooves in a porcelain chemists' tray, and performed field tests to determine whether the substance might be cocaine. Although Fleishman took about half of a gram out of the bag for his own use and said that he was stealing from his source, Officer Meals did not take any more of the substance for additional testing because he felt it would jeopardize the operation. According to Officer Meals' testimony, cobalt thiocyanate caused the substance in the first groove to turn blue, and the addition of stannous chloride left the color unchanged. A drop of sodium hydroxide caused the substance in the second groove to emit a wintergreen odor. Although other substances might react in the same manner, the results of the field tests were consistent with cocaine.

After conducting the tests, Officer Meals placed the tray on the floorboard of his vehicle. He later put the tray in his briefcase and placed the briefcase in the trunk. Officer Meals testified that he made no effort to preserve the contents of the tray for further testing because he expected to purchase pound quantities the next day.

On February 1, 1983, Fleishman introduced Officer Meals to the defendant, Thomas Dale Pope as the source of the deal. Pope told Officer Meals that he would get a quarter pound of cocaine for Meals to purchase. However, he never returned. When it became apparent that the deal would not be consummated, Officer Meals retrieved the tray from his briefcase. He testified that, because there was no visible residue left on the tray and because he did not think there was anything left to test, he did not scrape the tray for residue or send it immediately to the Colorado Bureau of Investigation (CBI) for testing. Officer Meals sent the tray to CBI two weeks later. It is not clear whether Officer Meals submitted it for testing or whether he simply returned the tray to its origin. In any event, no further tests were conducted on the tray.

On April 25, 1983, Pope was charged in Boulder District Court with possession, sale, and conspiracy to sell a schedule II controlled substance. Tom Netwal of the Colorado Bureau of Investigation, an expert in chemistry, testified that, since the amount of residue necessary to conduct a definitive test would normally be visible, the possibility of conducting a test on the tray described by Officer Meals as empty would not have been very good. However, in his opinion, in order to maximize the chances of conducting a definitive test, Meals should have placed the tray in a plastic bag, sealed it, and submitted it to the CBI laboratory.

Defendant's expert witness, Robert Shapiro, testified that ten to twenty milligrams of a substance is necessary to conduct a definitive laboratory test, and that, had Officer Meals taken this amount from the quarter ounce Fleishman had given him, it would not have visually depleted the quantity nor would the standard triple balance scale used in drug transactions have detected the missing quantity.

The trial court, relying on *People v. Hedrick*, 192 Colo. 37, 557 P.2d 378 (1976), found that the police had destroyed poten-

tially exculpatory and material evidence and dismissed the charges against the defendant. The court concluded that it would be insufficient to simply exclude testimony concerning the field test and dismissed the charges. We reverse.

■ In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196. The rule of *Brady* was later distilled into a three-part test. Due process is violated when: (1) the prosecution suppresses evidence after a request by the defense; (2) the evidence is exculpatory or favorable to the defendant; and (3) the evidence is material to the case. *See Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2567–68, 33 L.Ed.2d 706 (1972).

The *Brady* and *Moore* decisions focused on situations where the prosecution suppressed existing evidence. We have applied the *Brady-Moore* principle to cases where an agent of the state has failed to preserve "material" evidence in the course of a post-arrest investigation. *See People v. Sheppard,* 701 P.2d 49 (Colo.1985); *People v. Garries,* 645 P.2d 1306 (Colo.1982); *People v. Gomez,* 198 Colo. 105, 596 P.2d 1192 (1979); *Garcia v. District Court,* 197 Colo. 38, 589 P.2d 924 (1979). In the failure-to-preserve context, it is usually impossible to determine if the evidence would have been exculpatory within the meaning of *Brady.* We interpreted the second part of the *Brady* test and said:

> It is not necessary for a defendant to demonstrate that the evidence he seeks to discover, but which is no longer available for examination by the court, would have been favorable to him ... so long as that evidence is not merely "incidental" to the prosecution's case or to the defendant's affirmative defense.... It is sufficient that the material " 'might' be 'favorable' to the accused."

*Garcia v. District Court* at 46, 589 P.2d at 929 (citations omitted).

The body of Colorado case law involving the state's failure to preserve "non-incidental" evidence developed in the absence of a United States Supreme Court pronouncement on the issue. The Court addressed the issue in *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), and held that the duty of preservation extended only to "constitutionally material" evidence:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, see *United States v. Agurs,* 427 U.S. [97], at 109–110 [96 S.Ct. 2392, at 2400, 49 L.Ed.2d 342 (1976)], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*California v. Trombetta* at 488–89, 104 S.Ct. at 2534 (footnote omitted).

The *Trombetta* decision conflicts with our opinion in *Garcia* and cannot be reconciled on the federal due process issue. The *Trombetta* court concluded that California's failure to preserve the breath samples of suspected drunken drivers did not amount to a due process violation because California's testing procedures assured that the breath samples were more likely to inculpate rather than exculpate the defendants. *California v. Trombetta* at 489, 104 S.Ct. at 2534. In *Garcia,* a case also involving the preservation of breath samples, we held that the defendant need not establish the exculpatory nature of the destroyed evidence so long as the evidence is not merely incidental to the case. *Garcia,* 197 Colo. at 46, 589 P.2d at 929. *Trombetta* implicitly overrules that portion of *Garcia* that addressed federal due process con-

cerns.[1] We do not decide the continued vitality of the *Garcia* rule as a Colorado constitutional standard because, in light of our disposition of this case, the issue is not ripe for review.

The defendant claims that Officer Meals violated his due process rights in two ways. First, Officer Meals had the opportunity to remove ten to twenty milligrams of the suspected substance during his conversation with Fleishman. The defendant suggests that this minute amount could have been removed without detection by Fleishman and saved for laboratory analysis at a later time. Second, the defendant urges that, once it became clear to Officer Meals that the large cocaine transaction would not be concluded, Officer Meals was obligated to preserve the residue from the field test tray and transmit the sample for laboratory testing. We address each of these contentions in turn.

The defendant's federal due process rights were not violated by Officer Meals' failure to remove an additional sample from Fleishman's bag for later testing. Nothing in *Trombetta* requires an undercover officer to gather apparently inculpatory evidence in the first instance. Rather, the *Trombetta* analysis becomes relevant only after the police take custody of and fail to preserve constitutionally material evidence.

We also decline the defendant's invitation to extend the preservation rule of *Garcia* to the actions of Officer Meals during his transaction with Fleishman. *Garcia* and its progeny involved a failure to preserve evidence after arrests had been made and the facts had stabilized. *See, e.g., People v. Sheppard*, 701 P.2d 49 (Colo.1985) (destruction of defendant's automobile by a wrecker-salvage service in a vehicular

homicide prosecution, after the defendant moved for independent testing by an expert, constituted prosecutorial suppression of material evidence and justified dismissal of the case); *People v. Garries*, 645 P.2d 1306 (Colo.1982) (destructive testing of blood stain obtained from investigation of crime scene in murder prosecution constitutes prosecutorial suppression); *People v. Gomez*, 198 Colo. 105, 596 P.2d 1192 (1979) (systematic nonpreservation of evidence occurred when unnecessary, second set of qualitative tests conducted on substance believed to be heroin destroyed evidence and precluded independent testing by defendant); *Garcia v. District Court*, 197 Colo. 38, 589 P.2d 924 (1979) (failure to collect and preserve breath samples after arrest violates due process when preservation can be accomplished as mere incident to a procedure routinely performed by state agents). The instant case is dramatically different. Officer Meals was involved in an ongoing undercover operation to buy pound quantities of cocaine. He testified that he did not remove an additional sample because he thought it would be "bad form" in an illicit transaction of that magnitude, and might jeopardize the entire undercover operation. Officer Meals also stated that he felt the deal would go through the next day, and that any evidence needed to successfully prosecute the defendant would be obtained at that time.

■ ■ In our view, whether prosecutorial misconduct constitutes suppression of material evidence depends on an *ad hoc* evaluation of the facts in every case. This case simply does not involve a failure to preserve evidence where preservation could have been accomplished as a mere incident to an ordinary procedure. Thus, the field tests conducted by Officer Meals, and his failure to remove additional samples, did

---

1. A state court decision does not rest on adequate and independent state grounds when it "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion...." *Michigan v. Long*, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476–78, 77 L.Ed.2d 1201 (1983).

Aside from a cursory reference to the confrontation clause of the Colorado Constitution, the *Garcia* decision appears to rest primarily on federal law, or on Colorado cases interpreting federal law. *See Garcia*, 197 Colo. at 45–46, 589 P.2d at 929.

not amount to a suppression of material evidence and did not violate the defendant's due process rights.

Officer Meals tested the cocaine to determine the bona fides of the transaction. In ferreting out the often elaborately clandestine transactions in narcotics, it is necessary for police officers to assume the identity of a purchaser or user. A cocaine purchaser does not want to buy flour or some other spurious substance, and the seller recognizes that the sale of a controlled substance is a serious crime. Both the buyer and the seller are suspicious of the other and are aware of the illicit and unlawful ends achieved by the sale of narcotics. In the present case, the determinative factors are: (1) the material was obtained for testing to determine whether a purchase would be made; (2) the material was not obtained for use as evidence but to determine whether it provided a positive cocaine reaction; (3) the test was not conclusive and was merely a field test for preliminary identification purposes; and (4) prejudice to the defendant, if any, was minimal. The undercover police officer in this case was conducting an investigation and did not have an affirmative duty to collect and preserve evidence in the course of his preliminary negotiations to purchase cocaine. On the particular facts of this case, the failure to collect and preserve additional samples of the suspected substance did not amount to a suppression of evidence.

The defendant also argues, and the trial court found, that Officer Meals was obligated to preserve and transmit the residue of his field tests once it became clear that the larger transaction would never be concluded. The trial court found "that the availability of the dish, twenty-four hours after the field test, could have resulted in chemical tests being done." This finding is unsupported by the record. The prosecution's expert, Agent Netwal, testified that, if the tray appeared empty as Officer Meals testified, "the possibility would [not] have been very good to test at that point." The defendant's expert, Robert Shapiro, testified that a laboratory analysis would have been possible had the porcelain dish been placed in a plastic bag. This conclusion, however, was obviously premised on the assumption that some residue remained. Yet Officer Meals testified that no residue remained in the dish when it became clear the transaction would not go through.

We have found no authority for the proposition that the police are obliged to preserve nonexistent evidence. A determination of whether the porcelain dish contained residue is therefore crucial to the resolution of this case. We are not in a position to make a factual finding, and the record is not sufficient to support the trial court's findings. Accordingly, we remand to the district court for a further hearing to determine if, at the time Officer Meals realized he would not acquire the pound quantities of cocaine, there existed residue from Officer Meals' field tests in a sufficient quantity to permit later laboratory testing.

If the trial court again concludes that the defendant's due process rights were violated, under either the United States or Colorado Constitutions, because Officer Meals failed to preserve the residue of the field test, the trial judge must then decide on the appropriate sanction. It should be noted that "[t]he imposition of sanctions serves the dual purpose of protecting the integrity of the truth-finding process and deterring the prosecutor and the police from destroying material evidence." *People ex rel. Gallagher v. District Court*, 656 P.2d 1287, 1293 (Colo.1983). "Dismissal is a drastic remedy to be reserved for situations where no other sanction would attain the proper result." *People v. Holloway*, 649 P.2d 318, 320 (Colo.1982).

Accordingly, we reverse and remand for a further hearing consistent with this opinion.

QUINN, C.J., dissents in part.

LOHR, J., does not participate.

QUINN, Chief Justice, dissenting in part:

While I concur in the court's reversal of the judgment of dismissal, I write separately because I disagree with some of the directions given by the majority to the trial court on remand. In my view, a proper resolution of this case requires a determination by the trial court of three questions: (1) Was any evidence available in a quantity sufficient to be tested at the time Officer Meals completed his field test and returned to his car? (2) If so, did the state have a duty, under either the United States or Colorado Constitution, to preserve that evidence? (3) If it did, what sanction is appropriate in light of the state's failure to preserve the evidence?

### I.

Since, as the majority has observed, the state has no duty to preserve nonexistent evidence, a determination of whether the porcelain dish contained a quantity of residue sufficient for later laboratory testing is crucial to the resolution of this case. My disagreement with the majority on this issue does not relate to the necessity for such a determination, but rather, to the appropriate time frame on which the trial court should focus in making that determination. The majority directs the trial court to determine whether there was a residue remaining in the dish on February 1, 1983, after Officer Meals realized that the sale would not be consummated. In view of the fact that the charges filed against the defendant are based on the preliminary negotiations between Officer Meals and Fleishman on January 31, 1983, the appropriate inquiry, in my opinion, should be whether there was any residue that could be tested when Officer Meals returned with the tray to his car on January 31, immediately following the field test.

I agree with the majority that Officer Meals had no obligation to endanger his cover by taking an additional sample of the powder during his preliminary negotiations with Fleishman. In view of the not unreasonable possibility that the final sale would not be completed as contemplated, however, I believe that it was incumbent on the officer to determine whether any residue had been left of the field test sample, and to preserve any such existing residue, as soon as he had safely completed his preliminary negotiations on January 31 and returned to his car.

### II.

If the trial court determines that there was sufficient residue to preserve on January 31, after the completion of Officer Meals' preliminary negotiations with Fleishman, I believe the next inquiry should be whether the state had a duty, either under the Colorado or United States Constitution, to preserve that evidence.

Although in this case the defendant's motion to dismiss makes reference to a denial of due process under both the Colorado and United States Constitutions, the trial court did not indicate whether it considered its holding to be dictated by state or federal due process requirements, or both. In *People v. Gann*, 724 P.2d 1318, 1321 (Colo.1986), we indicated that the federal due process requirements for preservation of evidence are determined by applying the "constitutional materiality" standard of *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). We declined in *Gann*, however, to resolve whether the *Trombetta* standard or some other standard should be adopted as part of state constitutional doctrine. As in *Gann*, I believe that question should be answered in the first instance by a trial court only after the issue is squarely placed before it under a fully developed record.

On remand, the trial court in this case should first consider whether the evidence involved here meets the *Trombetta* standard of "constitutional materiality" and thus can be the basis for a federal due process claim predicated on the state's failure to preserve evidence that might be expected to play a significant role in the defense of charges filed against the defendant. This determination should be made by considering: (1) whether the evidence possessed an exculpatory value that

was apparent to the officer before it was destroyed; and (2) whether the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534.

If it is determined that the evidence in this case does not meet the *Trombetta* standard, it will then be necessary for the trial court to consider whether a more expansive duty regarding the preservation of evidence exists under Colorado's Due Process Clause. If the court determines that such duty exists, it should then decide whether the state breached that duty in this case.

### III.

If the trial court determines that the state breached its duty to preserve evidence under either the federal or state constitution, it must fashion an appropriate sanction. I concur in the majority's observation that the sanction of dismissal is a drastic remedy, and I would place the sanction of suppression in that same category. In some situations, however, no sanction less than dismissal or suppression can adequately vindicate the constitutional deprivation resulting from the loss or destruction of exculpatory evidence. If in this case, for example, the trial court were to find that there was a sufficient residue to preserve and that Officer Meals' failure to preserve the residue deprived the defendant of the only practicable means of controverting the very evidence on which the charges are based, then it would appear to me that anything less than suppression would be an illusory sanction at best and would fall far short of redressing the constitutional violation.