The PEOPLE of the State of
Colorado, Petitioner,

v.

Randy L. HUMES, Respondent.

No. 87SC115.

Supreme Court of Colorado,
En Banc.

Sept. 12, 1988.

As Modified on Denial of Rehearing
Oct. 11, 1988.

James F. Smith, Dist. Atty., Steven L.
Bernard, Chief Trial Deputy, Brighton, for
petitioner.

Michael D. Brown, Arvada, for respondent.

Colorado Criminal Defense Bar, James
England, Boulder, for amicus curiae Colorado Criminal Defense Bar.

VOLLACK, Justice.

In this appeal, the People seek reversal
of the Adams County District Court's order
affirming the county court's suppression of
evidence of blood alcohol test results obtained by the prosecution. Based on our
holding in *People v. Greathouse*, 742 P.2d
334 (Colo.1987), we reverse and remand the
case for further proceedings.

I.

In April 1986, Randy Lee Humes was
arrested for Driving Under the Influence,
in violation of section 42–4–1202, 17 C.R.S.
(1984 & 1987 Supp.). At the time of his
arrest, a sample of Humes' blood was obtained pursuant to the express consent provisions of Colorado's motor vehicle statute
in order to determine his blood alcohol content. *See* § 42–4–1202(3), 7B C.R.S. (1984).
The blood alcohol test result was 0.333,
significantly over the legal limit.[1] Humes

1. An individual is presumed to be driving under
the influence of alcohol when "the amount of

alcohol in such person's blood is 0.10 or more
grams of alcohol per one hundred milliliters of
blood." § 42–4–1202(2)(c). A presumption of
driving while impaired applies when the blood

was charged with Driving Under the Influence.

Prior to trial, Humes filed a Motion to Suppress Blood Test, Motion to Dismiss or Suppress All Evidence, and a Supplemental Motion to Dismiss. The latter motion was filed after defense counsel learned that no suitable sample of Humes' blood was available to him for independent testing. The county court granted the defendant's supplemental motion and ordered the blood test result obtained by the prosecution suppressed on the basis that the unavailability of a second sample of Humes' blood taken at the time of his arrest violated his due process rights under the Colorado Constitution. On interlocutory appeal to the district court the suppression order was affirmed. This appeal followed.

At the motions hearing before the county court judge, it was established that two samples of the defendant's blood were drawn upon his arrest. The prosecution sent its blood sample to a laboratory which determined Humes' blood alcohol content to be 0.333. When the defendant attempted to have a laboratory conduct an independent retest of the second sample, it was learned that neither the first nor the second sample could be used to conduct an accurate retest.[2]

After hearing this evidence, the county court concluded that the issue before it was: "[H]ave courts construed the Colorado Due Process clause to provide more rights to an individual than the Due Process clause of the Fourteenth Amendment?" The court held that *Garcia v. District Court*, 197 Colo. 38, 589 P.2d 924 (1979), controlled, based on its interpretation of *People v. Pope*, 724 P.2d 1323 (Colo. 1986). Applying the three-part test[3] in *Garcia*, the judge held that the *Garcia* requirements had been met. As a result, the judge held that Humes' due process rights had been violated under the Colorado Constitution.[4] The blood test results were ordered suppressed.

On appeal, the district court affirmed the county court's suppression order, agreeing that "the People's failure to provide a sample of blood for independent testing constituted a violation of Defendant's rights under the due process clause of the Colorado Constitution." The district court agreed with the county court "that *Garcia* expresses the current Colorado constitutional standard to be applied." The People filed this appeal from the district court's affirmance.

## II.

The question presented is whether the sanction of dismissal of the criminal charge of driving while under the influence of an intoxicating liquor is automatically required under article II, section 25 of the Colorado Constitution when a second sample of a defendant's blood or breath test is not available for independent testing.

alcohol content is in excess of 0.05 but less than 0.10. § 42–4–1202(2)(b).

2. The sequence of events as presented by the parties at the county court hearing was not entirely consistent with the county court's factual findings. The sequence of events, however, is not essential to our analysis. The parties do not dispute the district court's finding that "[F]or various reasons, neither sample could be independently tested."

3. The three-part *Garcia* test is (1) whether evidence was suppressed or destroyed by the prosecution, (2) whether the evidence is exculpatory, and (3) whether the evidence is material to the defendant's case. 197 Colo. at 45–46, 589 P.2d at 929. The county court found that the evidence was material, that "the evidence in question is not merely incidental to the prosecution's

case," and that the evidence might have been favorable to the defendant. The court also found that "evidence has been suppressed and/or destroyed by agents of the prosecution" because "there are procedures that are routinely employed and performed at the direction of the prosecution by State agents that enable second samples to be preserved in such a manner so that they can be scientifically and reliably retested. That wasn't done here...." On this basis, the county court suppressed the blood test results.

4. In footnote 1 of *Pope*, this court noted: "Aside from a cursory reference to the confrontation clause of the Colorado Constitution, the *Garcia* decision appears to rest primarily on federal law, or on Colorado cases interpreting federal law. *See Garcia*, 197 Colo. at 45–46, 589 P.2d at 929." 724 P.2d at 1326 n. 1.

Based on our holding in *People v. Greathouse,* 742 P.2d 334 (Colo.1987), we conclude that it does not.

The United States Supreme Court addressed the state's failure to preserve non-incidental evidence under the federal due process clause in *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). In *Trombetta,* the Court held that the duty to preserve evidence was "limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488–89, 104 S.Ct. at 2534.

In *People v. Pope,* 724 P.2d 1323 (Colo. 1986), we addressed the effect of *Trombetta* on Colorado case law. We held that "*Trombetta* implicitly overrules that portion of *Garcia* that addressed federal due process concerns," but declined to decide "the continued vitality of the *Garcia* rule as a Colorado constitutional standard because, in light of our disposition of this case, the issue is not ripe for review." 724 P.2d at 1325–26 (footnote omitted). This was the state of the law in November 1986 when the county court entered the suppression order in this case, and in February 1987 when the district court affirmed the county court's order.

In September 1987, we expressly adopted the *Trombetta* standard under Colorado's due process clause in *People v. Greathouse,* 742 P.2d 334 (Colo.1987). In order to require suppression of evidence under Colorado's due process clause, the unavailable evidence must be "constitutional[l]y material." To be " 'constitutionally material evidence' ... under Colorado's due process clause," the evidence must meet two requirements. *Id.* at 338. First, "the evidence [must] possess an exculpatory value apparent before the evidence was lost or destroyed." The second requirement is "whether the defendant was unable to obtain comparable evidence by other reason-

ably available means." *Id.* at 338–39. Our holding in *Greathouse* therefore applies, and we recognize that the courts below did not have the benefit of our decision in *Greathouse* when those rulings were entered.

## III.

To prove that a due process violation has occurred, it must be shown that (1) evidence was suppressed or destroyed by the prosecution; (2) the evidence possessed an exculpatory value apparent before it was destroyed; and (3) the defendant cannot obtain comparable evidence by other reasonably available means. *Greathouse,* 742 P.2d at 337.

The first issue, then, is whether evidence in this case was suppressed or destroyed by the prosecution. The parties do not dispute that a second sample of the defendant's blood was not properly preserved by the prosecution. When evidence can be routinely collected and preserved by state agents, "failure to do so is tantamount to suppression of the evidence." *Id.* There are routine procedures for collecting and preserving blood samples, yet these samples were not adequately preserved by the state or state agents to enable the defendant to conduct an independent chemical test. We conclude that the first prong of the three-part test is satisfied. *People v. Sheppard,* 701 P.2d 49, 52 (Colo.1985); *People ex rel. Gallagher v. District Court,* 656 P.2d 1287, 1291–92 (Colo.1983).

Another requirement is that the defendant prove that the unavailable evidence was material. To require suppression of evidence under Colorado's due process clause, the evidence must be constitutionally material. For evidence to be constitutionally material, it must meet two requirements. *Greathouse,* 742 P.2d at 338. First, "the evidence [must] possess an exculpatory value apparent ‚before the evidence was lost or destroyed." *Id.* Second, it must be shown that the defendant "was unable to obtain comparable evidence by other reasonably available means." *Id.* at 338–39 (quoting *Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534). In assessing the

constitutional materiality of the unavailable evidence, therefore, we must first determine whether the second blood sample possessed an exculpatory value that was apparent before the sample was lost or destroyed.

Other jurisdictions have addressed this issue in the context of breath or blood alcohol test results. The United States Supreme Court stated in *Trombetta:*

> [A] dispassionate review of the Intoxilyzer and the California testing procedures can only lead one to conclude that *the chances are extremely low that preserved samples would have been exculpatory.... In all but a tiny fraction of cases, preserved breath samples would simply confirm* the Intoxilyzer's determination that the defendant had a *high level of blood-alcohol concentration* at the time of the test. Once the Intoxilyzer indicated that respondents were legally drunk, breath samples were much more likely to provide inculpatory than exculpatory evidence.

*Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534 (footnotes omitted) (emphasis added) (applied to drug testing in *Wheeler v. State,* 691 P.2d 599, 603 (Wyo.1984)).

The Idaho Supreme Court has held: "There is nothing in this record which would establish that additional tests on the samples of blood would show anything other than that the blood alcohol of each of the appellants was well in excess of .10, the legal limit...." *State v. Albright,* 110 Idaho 748, 750–51, 718 P.2d 1186, 1188–89 (1986) (destruction of blood samples in a DUI case did not constitute a due process violation under the federal Constitution).

The Rhode Island Supreme Court recognized that the fairness of this conclusion is supported by the fact that the defendant has the opportunity to cross-examine prosecution witnesses regarding the accuracy of the test procedures and the accuracy of the equipment. *State v. Williams,* 480 A.2d 1383, 1390 (R.I.1984); *see People v. Jor-*

*dan,* 103 Ill.2d 192, 82 Ill.Dec. 925, 934, 469 N.E.2d 569, 578 (1984).

In *People v. Sheppard,* 701 P.2d 49 (Colo.1985), we interpreted *Trombetta* as follows:

> Because the testing of a breath sample by the defendant would *probably simply confirm the results* of the state's intoxilyzer test, and because the *defendant could have demonstrated any lack of reliability* of that test by a number of other means, the [*Trombetta* ] court concluded that "the Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce breath-analysis tests at trial."

701 P.2d at 53 (emphasis added) (quoting *Trombetta,* 467 U.S. at 491, 104 S.Ct. at 2535) (Dismissal of criminal charges was not erroneous because the evidence destroyed by the prosecution—the vehicle involved in the accident—was conceded by the prosecution to be "both material and favorable to the defendant." *Id.* at 51–52.).

As in *Greathouse,* the blood sample at issue here fails to meet the "exculpatory value" requirement. In a situation such as this, where one blood sample has already been tested, we are not persuaded that a second sample drawn at the same time has an "apparent" exculpatory value. Even if the second sample had been properly preserved, was tested, and revealed a lower blood alcohol content, it is highly unlikely that the result would be so much lower as to fall under the legal limit. This is especially true where, as here, the result of the first blood sample established a blood alcohol content over three times the legal limit.[5]

Because we are not persuaded that this evidence had exculpatory value apparent before its loss, we need not consider whether the defendant would be unable to obtain comparable evidence by other reasonably available means. We conclude that the facts presented here do not establish a violation of Humes' due process rights un-

---

**5.** In order to offset any unfairness, we note that if a trial is held on remand, defense counsel should have the opportunity to cross-examine

prosecution witnesses during the trial about the procedures and equipment used to determine the defendant's blood alcohol level.

der the Colorado Constitution.[6] We reverse the district court's order affirming the county court's suppression order and remand the case for further proceedings consistent with this opinion.

---

6. This holding does not relieve arresting officers of their statutory duty to collect and preserve independent samples of blood or breath under § 42–4–1202(3)(b), 17 C.R.S. (1984), and 5 C.C. R. 1005–2 (1987).