**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

**v.**

**Robert ENRIQUEZ, Defendant–Appellee.**

**No. 87SA131.**

Supreme Court of Colorado, En Banc.

Oct. 31, 1988.

Barney Iuppa, Dist. Atty., Judy A. Hedges, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Philip W. Ogden, Colorado Springs, for defendant-appellee.

VOLLACK, Justice.

The People appeal from an order of the El Paso County District Court dismissing three of four criminal charges filed against Robert Enriquez. The charges were dismissed for failure of the prosecution to preserve potentially exculpatory evidence. We vacate the dismissal order and remand to the district court for reinstatement of the charges and further proceedings consistent with this opinion.

I.

At 11:33 p.m. on September 19, 1986, an eleven year old boy was killed after being struck by a 1971 yellow[1] Volkswagen owned by Michael Moore. The victim was sitting on a moped[2] in the middle of a residential street in Colorado Springs when he was killed. There were many witnesses. Testimony at the preliminary hearing revealed that the Volkswagen was driven by Robert Enriquez, a friend who had taken the car without Moore's permission. Also in the Volkswagen was Bernard Melvin. After the accident, Enriquez and Melvin abandoned the car under a bridge about three blocks away. The Colorado Springs police were summoned and they discovered the abandoned Volkswagen within minutes. Enriquez was apprehended a few hours later. Blood alcohol tests performed on Enriquez at 4:07 a.m. and 5:07 a.m. revealed respective blood alcohol levels of 0.143 and 0.123, both above the legal limit.[3] Enriquez was subsequently charged by information with vehicular homicide,[4] leaving the scene of an accident,[5] driving under the influence,[6] and reckless driving.[7]

After discovering the abandoned car, a Colorado Springs police photographer was summoned to take flash photographs of the Volkswagen under the bridge. He noticed that the front hood, windshield, and top of the car were damaged in the accident. The Volkswagen was delivered to the Colorado Springs police department impound lot later that day. More photographs of the car were taken that afternoon. In all, twenty-

---

1. The color of the Volkswagen was described alternately as either white or yellow. The owner of the car said it was yellow, and the car registration described it as yellow.

2. Different witnesses referred to this vehicle as either a moped or a bicycle. The vehicle was a moped the size of a bicycle, whose engine was not running at the time of the accident.

3. An individual is presumed to be driving under the influence of alcohol when "the amount of alcohol in such person's blood is 0.10 or more grams of alcohol per one hundred milliliters of blood." § 42–4–1202(2)(c), 17 C.R.S. (1984). A presumption of driving while ability impaired applies when a motor vehicle operator's blood alcohol content is in excess of 0.05 but less than 0.10. § 42–4–1202(2)(b).

4. § 18–3–106, 8B C.R.S. (1986).

5. § 42–4–1401(1), 17 C.R.S. (1984).

6. § 42–4–1202(1)(a) & (c), 17 C.R.S. (1984).

7. § 42–4–1203(1), 17 C.R.S. (1984).

six black-and-white photographs of the Volkswagen were taken.

Enriquez on September 20 filed a motion to preserve a number of items, including the Volkswagen. On October 10, the Volkswagen was inadvertently released[8] from the impound lot to the owner, Michael Moore, who subsequently overhauled the engine, replaced the windshield and hood, and discarded them.[9] He also replaced and discarded the seat covers and floor mats. The tires and brakes, however, were not repaired. The dent on top of the car on the driver's side was also not repaired, although primer was applied over the dent.

After learning that the Volkswagen hood had been permanently lost, Enriquez filed a motion to dismiss the charges based on *People v. Sheppard*, 701 P.2d 49 (Colo. 1985), for failure to preserve potentially exculpatory evidence. Following a series of three hearings,[10] the district court ruled that, although this case was distinguishable from the facts in *Sheppard*,[11] loss of the damaged hood was properly attributable to the prosecution. Because the damaged hood was probably "the singularly most important part of the automobile" to the defense, and because Enriquez had

made a specific request for its preservation, the district court held that, under the three-part test of *Garcia v. District Court*, 197 Colo. 38, 589 P.2d 924 (1979), it had no choice but to dismiss the charges of vehicular homicide, driving under the influence, and reckless driving. The charge of leaving the scene of an accident was not dismissed by the court, but was dismissed shortly thereafter at the request of the prosecution.

The People appealed the dismissal order directly to this court,[12] asserting that under the standard of "constitutional materiality" created by *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), and adopted by this court in *People v. Greathouse*, 742 P.2d 334 (Colo.1987), the defendant had not established a violation of his due process right to a fair trial under the United States or Colorado Constitution. In the alternative, the People assert that even if Enriquez' due process right was violated, dismissal of the charges was too severe a sanction in this case.[13]

## II.

In determining whether the state's failure to preserve potentially excul-

---

8. The record shows that an error had been made in the paperwork at the impound lot, so that the releasing officer did not realize that the Volkswagen should not have been released. The parties do not dispute that the mistake was inadvertent, and not the result of bad faith on the part of the prosecution or the police department.

9. After removing the Volkswagen from the impound lot, Moore apparently attempted to drive the car to Texas to see his mother. The car broke down in Oklahoma, and was towed to his mother's house in Wharton, Texas, where the repairs were made. The hood was sold to a nearby junk yard, where it was demolished. The Volkswagen was subsequently returned to Colorado on a car hauler, and was again placed in the Colorado Springs police impound lot.

10. The first hearing was held on January 30, 1987. By then, the Volkswagen had been removed from Colorado and repaired in Texas. Neither Carl A. Cover, the accident reconstruction expert for the defense, nor William J. Heffner, the accident reconstruction expert for the prosecution, had been able to inspect the Volkswagen. Both experts, however, saw the photographs and were aware of the physical and

testimonial evidence provided at the preliminary hearing.

The second hearing was held on February 13, 1987. By then, the repaired Volkswagen had been hauled back to the impound lot. A third hearing was ordered because the defense expert had not yet been able to inspect the car.

The third hearing was held on March 2, 1987. At the conclusion of the hearing, the district court dismissed Counts One, Three, and Four.

11. We agree with the district court that *People v. Sheppard*, 701 P.2d 49 (Colo.1985), is not dispositive of this case. In *Sheppard*, the defendant was left with no evidence to support his theory of defense that the automobile crash that killed the victim was due to mechanical failure. In this case, the defendant has a substantial amount of physical and testimonial evidence relevant to his theories of defense.

12. Jurisdiction is properly before this court pursuant to section 16–12–102, 8A C.R.S. (1986).

13. The People argued that the appropriate sanction for failure to preserve the hood would be to order the parties to stipulate to the speed of the moped at the time of the collision.

patory evidence violates the due process clause of the United States or Colorado Constitution, the defendant must establish that: (1) the evidence was suppressed or destroyed by the prosecution; and (2) the evidence was material. *Greathouse,* 742 P.2d at 338.[14] To be material, the evidence that was destroyed must possess an exculpatory value that was apparent before it was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *People v. Humes,* 762 P.2d 665, 667 (Colo.1988) (quoting *Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534). Therefore, in order to establish a due process violation for failure to preserve potentially exculpatory evidence, the defendant must establish that: (1) the evidence was suppressed or destroyed by the prosecution; (2) the evidence possessed an exculpatory value that was apparent before it was destroyed; and (3) the defendant was unable to obtain comparable evidence by other reasonably available means. Only if all three parts of the test are met is there a due process violation. *People ex rel. Gallagher v. District Court,* 656 P.2d 1287, 1290 (Colo.1983) (citation omitted). If a due process violation has occurred, a reviewing court will then decide whether the trial court has fashioned an appropriate remedy, recognizing that the trial court has broad discretion in this regard. *People v. Holloway,* 649 P.2d 318, 320 (Colo.1982) (citations omitted).

 The district court did not have the benefit of the *Greathouse* decision when it entered its dismissal order based on its interpretation of *Garcia v. District Court,* 197 Colo. 38, 589 P.2d 924 (1979). The *Garcia* standard of materiality, however, was implicitly overruled by our adoption of the *Trombetta* standard of constitutional materiality under both federal and state constitutional principles. *See Humes,* at 667; *Greathouse,* 742 P.2d at 338; *People v. Pope,* 724 P.2d 1323, 1325 (Colo.1986). Although the district court made general observations about the quality of the remaining evidence, it made no findings as to whether the evidence that was destroyed in this case possessed an exculpatory value that was apparent before it was destroyed and whether Enriquez was unable to obtain comparable evidence by other reasonably available means. We cannot say as a matter of law that photographs are comparable to the evidence they depict for purposes of determining whether a due process violation has occurred under *Trombetta.* But *cf. People v. Jordan,* 103 Ill.2d 192, 82 Ill.Dec. 925, 469 N.E.2d 569 (1984) (photographs are comparable evidence under *Trombetta* when defendant is able to cross-examine prosecution witnesses and put on other evidence). Whether a due process violation has occurred requires an evaluation of all the evidence by the finder of fact.

**14.** We recognize that our adoption of the *Trombetta* standard of constitutional materiality has had an impact on the "favorable character" part of the test, which was until recently the third part of the test. *See Greathouse,* 742 P.2d at 337. *Trombetta* focuses on the exculpatory value of the destroyed evidence and the availability of other comparable evidence. As we recognized before, however, "we have frequently referred to the 'favorable nature of the evidence' inquiry as a test of whether the evidence is 'exculpatory.'" *People ex rel. Gallagher v. District Court,* 656 P.2d 1287, 1290 n. 7 (Colo.1983).

Our adoption of *Trombetta* in *Greathouse* and *Humes* has rendered superfluous the "favorable character" part of the test of *Garcia* and its progeny. This is so because a showing that evidence "might be expected to play a significant role," *see Trombetta,* 467 U.S. at 488, 104 S.Ct. at 2533, is a necessarily higher standard than a showing of either the "reasonable proba-

bility that the evidence could have been of assistance," *see Gallagher,* 656 P.2d at 1291, or that the evidence "might be favorable" to the accused, *see Garcia,* 197 Colo. at 46, 589 P.2d at 929. Therefore, a showing that would satisfy the materiality requirement under *Trombetta* would also satisfy the favorable character requirement under *Garcia* and its progeny. By the same token, a showing that would satisfy *Garcia* but not *Trombetta* would not result in a due process violation, because the materiality requirement would not be met.

We conclude that an accused who establishes that destroyed evidence is material under *Trombetta* is not required to make an additional showing of the favorable character of the evidence. Compliance with the *Trombetta* standard of constitutional materiality is sufficient to satisfy the second and third parts of the test under *Garcia* and its progeny.

On remand, the district court is to enter findings of fact as to whether a due process violation has occurred under the *Trombetta* standard of constitutional materiality. It must determine whether the evidence that was destroyed in this case possessed an exculpatory value that was apparent at the time it was destroyed, and whether Enriquez was unable to obtain comparable evidence by other reasonably available means. *Humes,* at 667; *Greathouse,* 742 P.2d at 338; *Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534.

The district court's dismissal order is vacated. The case is remanded to the district court for reinstatement of the charges and further proceedings consistent with this opinion.