22CA2107 Peo v Countryman 07-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA2107
Jefferson County District Court No. 16CR2961
Honorable Tamara S. Russell, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Cody Allen Countryman,

Defendant-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUDGE DUNN
Brown and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

---

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Leah Scaduto, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Cody Allen Countryman, appeals the postconviction court's order denying his Crim. P. 35(c) motion seeking postconviction relief and requesting a proportionality review of his sentence.  We affirm.

## I.    Background

¶ 2    In the summer of 2016, the then-eight-year-old victim reported to her mother that Countryman had touched her underneath her underwear and put his finger in her.  The victim also disclosed other instances of touching.  The victim's mother took the victim to a hospital, where she underwent a forensic examination.  Countryman's DNA was not found on the victim's genitals or her underwear.

¶ 3    The prosecution charged Countryman with sexual assault on a child by one in a position of trust and sexual assault on a child by one in a position of trust as part of a pattern of abuse.

¶ 4    At trial, the jury heard directly from the victim and Countryman.  The victim testified that while watching a movie in her bedroom with Countryman, he started touching her and "stuck his finger in the hole in [her] vagina."  Countryman defended on the theory that the victim was attention seeking, though he admitted

that their bodies "could have touched" while he was watching the movie in bed and under the covers with the victim.

¶ 5 As to the lack of DNA evidence, it was undisputed that the victim's genitals had been cleaned with an alcohol wipe at the hospital. What was disputed was whether the cleaning occurred before or after the forensic exam. The victim's mother testified that she cleaned the victim with an alcohol wipe before the forensic exam, but the victim contradicted that testimony and stated that she cleaned herself with the alcohol wipe after the forensic exam. An expert witness testified that based on her review of the medical records, she guessed that the alcohol wipe was done before the exam — though she admitted that she didn't know for sure when the victim had been wiped with alcohol.

¶ 6 The jury convicted Countryman as charged, and the court sentenced him to a controlling prison sentence of eight years to life.

¶ 7 Countryman appealed his conviction, and a division of this court affirmed. *People v. Countryman,* (Colo. App. No. 18CA0207, July 16, 2020 (not published pursuant to C.A.R. 35(e)) (*Countryman I*).

2

¶ 8     Countryman then timely filed a Rule 35(c) motion raising multiple ineffective assistance of counsel claims and requesting a proportionality review of his sentence.

¶ 9     In a comprehensive written order, the postconviction court denied the ineffective assistance of counsel claims without a hearing and concluded that the request for a proportionality review wasn't cognizable under Rule 35(c).

¶ 10     On appeal, Countryman challenges the denial of his ineffective assistance of counsel claims and the court's refusal to consider his request for a proportionality review.

## II.     Ineffective Assistance of Counsel

¶ 11     We start with Countryman's contention that the postconviction court erred by denying his multiple ineffective assistance of counsel claims without a hearing.

### A.     Legal Principles and Standard of Review

¶ 12     To prevail on a claim of ineffective assistance of counsel, a defendant must show that his lawyer's performance was deficient — meaning certain acts or omissions of counsel were "outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984).  The defendant must also

show that the deficient performance prejudiced his defense —
meaning there is a reasonable probability that, but for counsel's
errors, the result of the proceeding would have been different. *Id.* at
694. A claim may be denied if the factual allegations are
insufficient to establish either *Strickland* prong. *Ardolino v. People*,
69 P.3d 73, 77 (Colo. 2003).

¶ 13 A defendant is entitled to an evidentiary hearing on his Rule
35(c) motion when he alleges facts that, if true, would entitle him to
relief. *White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988).
But a postconviction court may deny a motion without a hearing if
the allegations are bare and conclusory; the allegations, even if
true, do not warrant postconviction relief; or the claims are directly
refuted by the record. *People v. Duran*, 2015 COA 141, ¶ 9; *accord*
*Ardolino*, 69 P.3d at 77.

¶ 14 We review the denial of a Rule 35(c) motion without a hearing
de novo. *People v. Castillo*, 2022 COA 20, ¶ 15.

B. Failure to Investigate Medical Records and Hospital Staff

¶ 15 In his Rule 35(c) motion, Countryman alleged that his trial
counsel failed to conduct an adequate investigation by not
subpoenaing medical records and hospital staff to determine

4

whether the victim had been cleaned with an alcohol wipe before or after the forensic examination.

¶ 16    The postconviction court rejected this claim because trial counsel "was in possession of the medical records" and because the motion alleged no facts to suggest that expert testimony or records existed to rebut mother's testimony that she cleaned the victim with an alcohol swab before the forensic examination.

¶ 17    On appeal, Countryman maintains that trial counsel was ineffective by failing to "subpoena medical records and staff" from two hospitals and to investigate whether the alcohol wipe had been used before or after the forensic examination.

¶ 18    We reject the claim that trial counsel was deficient for not subpoenaing hospital medical records because the record shows that trial counsel had those records.  Indeed, Countryman doesn't dispute the postconviction court's finding that the prosecution disclosed the records before trial.  It was therefore objectively reasonable for trial counsel to not waste time and resources to subpoena records he already possessed.  *See Strickland,* 466 U.S. at 687-88 (noting a lawyer's performance is only deficient if it is objectively unreasonable); *see also Dunlap v. People,* 173 P.3d 1054,

1065 (Colo. 2007). And the Rule 35(c) motion doesn't allege any facts to suggest that other medical records existed that should have been subpoenaed. Thus, the motion failed to allege sufficient facts to establish deficient performance.

¶ 19    As to Countryman's claim that trial counsel should have subpoenaed unidentified hospital "staff," it fares no better. Beyond this bare allegation, the Rule 35(c) motion did not identify what staff should have been subpoenaed, what knowledge the staff had, or how subpoenaing any staff would have turned up "substantial evidence" that "might reasonably have led to a different result." *People v. Chambers*, 900 P.2d 1249, 1252 (Colo. App. 1994); *see also People v. Villanueva*, 2016 COA 70, ¶ 67 (A defendant "must do more than simply allege that other evidence could have aided his defense; he must identify the evidence and demonstrate that it would have advanced his defense."). Though Countryman wasn't required to present evidence at this stage, the vague and conclusory assertion that trial counsel should have subpoenaed unidentified hospital staff is nonetheless insufficient to allege *Strickland* prejudice.

¶ 20    Finally, to the extent Countryman generally asserts that had trial counsel investigated, he could have established that the alcohol wipe was used after the forensic examination, he alleged no facts to support that conclusory and speculative claim. *Duran*, ¶ 9.

¶ 21    We therefore conclude that the postconviction court did not err by denying this claim without a hearing.

### C.    Opening the Door to Inadmissible Evidence — Opening Statement

¶ 22    Countryman alleged in his Rule 35(c) motion that his trial counsel's opening statement — which asserted that the victim's "intact hymen" essentially refuted her claim of digital penetration — opened the door to bolstering expert testimony that the absence of physical injury was "common" and "expected" in child sex assault cases. Thus, he alleged his counsel's deficient performance prejudiced him.

¶ 23    The postconviction court rejected this claim because no expert ever testified that the absence of physical injury was either "common" or "expected." Rather, an expert in pediatric nursing and sexual assault exams simply responded "no" when asked "[d]o you always find injury" when a child alleges digital penetration. Then,

7

on cross-examination, the expert testified that she would not expect there to be "trauma" after digital penetration and that "we expect [kids] to have normal exams."

¶ 24    On appeal, Countryman concedes that the prosecution did not elicit an "opinion that it was 'common' to find no injury on children alleging digital penetration." But he argues that trial counsel "functionally elicited that opinion himself on cross-examination."

¶ 25    But Countryman did not allege in his Rule 35(c) motion that his counsel was ineffective during cross-examination; he challenged counsel's opening statement remarks. And we do not consider claims or allegations not raised and developed in the postconviction motion. *See People v. Stovall*, 2012 COA 7M, ¶ 3 (ineffective assistance of counsel claims that were not sufficiently presented to the postconviction court may not be raised for the first time on appeal); *see also People v. Rodriguez*, 914 P.2d 230, 251 (Colo. 1996) (rejecting the defendant's attempt to use his appellate brief "to fortify a number of issues inadequately raised or supported by his [postconviction] motion").

## D. Failure to Consult with a Medical Expert

¶ 26 Related to his claim that counsel was ineffective by opening the door to prejudicial expert testimony, Countryman alleged in his Rule 35(c) motion that his counsel was additionally ineffective — and "compounded the prejudice" from the "otherwise inadmissible expert witness testimony" — because he failed to "present" an expert "on the same issue" and "consult with an expert witness on the question of physical evidence."

¶ 27 The postconviction court rejected that claim. It concluded that because the expert did not testify that physical injury was common or expected in child sex assault cases, trial counsel was not ineffective for not presenting "contrary evidence through an expert witness."

¶ 28 Countryman doesn't now appear to challenge the postconviction court's ruling on the failure to *present* an expert witness. Rather, as we understand it, he contends that the postconviction court erred by not considering his claim that his counsel was ineffective by failing to *consult* with a medical expert before (1) claiming in opening statement that the victim would have

had injuries had she been sexually assaulted and (2) "cross-examining the prosecution's expert on this topic."

¶ 29     Even assuming Countryman separately alleged that his counsel was deficient for failing to consult a medical expert, the motion failed to sufficiently allege *Strickland* prejudice.  That's because the prejudice allegations are all tied to the premise that the expert testified that the absence of physical injury is "common" and "expected" in child sexual assault cases.  But, as discussed, that evidence was not presented.  And the motion alleged no other facts to establish what information an expert consultation would have yielded or how, had an expert been consulted, the outcome of either cross-examination or the trial would have been different.  It's not enough to speculate about what information a consultation could have produced or to simply assert that the outcome of the trial would have been different.  *Villanueva*, ¶ 68 (conclusory allegations of prejudice are insufficient under *Strickland*); *see also People v. Pendleton*, 2015 COA 154, ¶ 34 ("[T]he mere possibility that

additional investigation would have revealed useful information does not establish ineffective assistance.").[1]

¶ 30    We therefore conclude that the postconviction court properly denied this claim without a hearing, though on slightly different grounds.  *See People v. Vondra*, 240 P.3d 493, 494 (Colo. App. 2010).

### E.    Opening the Door to Bolstering Testimony — Cross-Examination

¶ 31    During his cross-examination of the victim's stepfather, trial counsel elicited testimony that the stepfather — who had been Countryman's best friend for decades — did not believe the victim at the time of the initial outcry and told Countryman and the police as much.  Counsel then elicited testimony that the stepfather had since changed his mind.  On redirect and with no objection, the stepfather confirmed that he now "believed" the victim and believed "that something happened."  When asked why the change, the stepfather replied, "Mostly therapy every week," and he explained

---

[1] Because Countryman's allegations are insufficient under Colorado law, his reliance on *Pavel v. Hollins*, 261 F.3d 210 (2d Cir. 2001), isn't instructive.

that as he learned more of the details, the situation made more sense.

¶ 32    Countryman alleged in his Rule 35(c) motion that trial counsel was ineffective by eliciting testimony about the stepfather's initial reaction to the allegation because it led to improper bolstering testimony on redirect.  And he alleged that the bolstering testimony was "powerful evidence" that was "prejudicial to [Countryman] at trial and on appeal."

¶ 33    The postconviction court rejected the claim, finding that trial counsel's questioning was a "strategic decision" that allowed counsel to later lay the foundation for expert testimony that raised issues about the victim's reliability.

¶ 34    Countryman argues that the postconviction court erred by denying this claim without a hearing and essentially assuming a strategic basis for trial counsel's "decision to open the door to" the bolstering testimony.  And he argues that he sufficiently alleged prejudice.

¶ 35    Absent evidence about trial counsel's reasoning for the questioning that seemingly led to bolstering testimony, the record presented is insufficient for us to conclude that trial counsel's

12

questioning was a strategic choice or even a necessary predicate to his expert's testimony. *See Dunlap*, 173 P.3d at 1075 (a reviewing court must examine counsel's reasons supporting alleged strategic decisions); *see also Ardolino*, 69 P.3d at 79 ("With regard to strategic choices, the credibility of [trial] counsel can be particularly important and is a matter to be resolved by the postconviction court."). Thus, the postconviction court erred by rejecting the claim on the deficient performance prong.

¶ 36 Even so, we conclude the postconviction court properly denied the claim without a hearing because the Rule 35(c) motion fails to allege *Strickland* prejudice. At most, the motion alleged that the bolstering testimony was harmful, Countryman was "prejudiced" at trial and on appeal by the questioning that led to improper bolstering testimony, and the conviction must be "reversed." But the motion failed to allege facts that, if true, show a reasonable probability that but for trial counsel's alleged deficient performance, Countryman would not have been convicted, or that the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 690; *see also Villanueva*, ¶¶ 68-69.

¶ 37    Because Countryman did not sufficiently allege prejudice, the postconviction court did not err by denying this claim without a hearing.

### F.    Failure to Disclose Expert Opinion

¶ 38    During trial, the court prohibited a defense expert from offering an opinion on the adequacy of the police investigation and evidence collection because the expert's report didn't sufficiently disclose that opinion.

¶ 39    On direct appeal, a division of this court agreed that the opinion hadn't been sufficiently disclosed but held that the court abused its discretion by excluding a portion of the expert's opinion. *Countryman I*, slip op. at ¶¶ 39-52.  Even so, the division found that the "minor limitation" on the expert's testimony was harmless because the error did not substantially influence the verdict or affect the fairness of the trial proceedings.  *Id.* at ¶ 52.

¶ 40    Countryman pursued a related claim in his Rule 35(c) motion, alleging that counsel's failure to adequately disclose the expert's opinion was deficient and prejudicial.  The postconviction court rejected the claim, disagreeing that "but-for the exclusion of one

small portion of [one expert's] testimony there is a reasonable probability that the result of the trial would have been different."

¶ 41 Countryman argues that he sufficiently alleged prejudice. But he doesn't address the fact that *Countryman I* already concluded that the exclusion of a minor portion of one expert's testimony was harmless. And the burden of demonstrating *Strickland* prejudice is "more difficult" than establishing harmless error. *Hagos v. People*, 2012 CO 63, ¶ 13. Having been unable to demonstrate harmless error, Countryman doesn't explain how his allegations are sufficient to establish the more difficult *Strickland* standard.

¶ 42 Nor does the Rule 35(c) motion help. As to prejudice, the motion alleged only that "[t]he absence of any DNA evidence linking" Countryman to the sexual assault was "hotly contested" and that the expert "would have testified that the absence of any DNA or other physical evidence, and the exposure of the [victim] to multiple different questioning sessions by family members, medical personnel, and law enforcement, all tended to make the [victim's] allegations" less reliable.

¶ 43 But the record refutes this allegation. The court didn't exclude testimony about the "absence" of DNA or physical evidence. Indeed,

the jury heard that Countryman's DNA was not found on the victim or her underwear. And the jury heard that the victim was questioned multiple different times by family members, law enforcement, medical personnel, and therapists. Beyond that, Countryman presented a separate expert qualified in DNA analysis and forensic testing who testified to mistakes in the DNA collection procedures and swabs that should have been collected from the victim and Countryman. And even with the limited restriction on one expert's ability to testify about police investigative procedures, that expert still testified about forensic interviews of children, memory, and suggestibility. He testified about the factors that made this investigation difficult and opined that the victim "may well be providing information that's not accurate." Based on the lack of corroborating physical evidence, trial counsel argued that the victim's statements weren't reliable and that "kids can come to believe something sincerely that's just not true."

¶ 44    For these reasons, the postconviction court properly denied this claim without a hearing.

### G. Failure to Disclose Criminal History

¶ 45    After the jury rendered its verdict, trial counsel learned that the prosecution had not disclosed that the victim's mother had pleaded guilty to a petty offense (disorderly conduct) in another jurisdiction and had a pending misdemeanor child abuse charge in the same jurisdiction where Countryman was prosecuted.  Trial counsel filed a motion for a new trial under Crim. P. 33(a) based on the newly discovered evidence but did not argue that mother's criminal history should have been disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963).  The trial court denied the motion, finding that mother's credibility was "not central to the case" and that the newly discovered information was not material and "most probably would not have resulted in a different outcome at trial."

¶ 46    On direct appeal, Countryman challenged the trial court's denial of his motion for a new trial, but he added a claim that the evidence was exculpatory and should have been disclosed under *Brady*.  *See Countryman I*, slip op. at ¶ 53. Reviewing the *Brady* claim for plain error, the division concluded that the undisclosed evidence was "merely impeaching" and "given the marginal potential

value of the evidence," the prosecution's failure to disclose the criminal charges didn't require reversal. *Id.* at ¶¶ 71-72.

¶ 47     Countryman renewed the *Brady* claim in his Rule 35(c) motion, alleging that counsel's failure to raise the *Brady* claim was deficient and prejudicial. The postconviction court rejected the claim, finding no "reasonable probability that the impeachment of [mother] would have resulted in a different result at trial."

¶ 48     To establish a *Brady* violation, a defendant must show that (1) the prosecution suppressed evidence; (2) the evidence is exculpatory or favorable to the defendant; and (3) the suppressed evidence is material to the case. *People v. Bueno*, 2018 CO 4, ¶ 29 (citing *People v. Pope*, 724 P.2d 1323, 1325 (Colo. 1986)). Materiality requires a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at ¶ 32 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

¶ 49     For two reasons, we conclude that the undisclosed criminal history was not material under *Brady*. First, Countryman neither alleged nor argues that the petty offense plea or the pending misdemeanor charge would be admissible under the Colorado Rules

of Evidence.  Second, even assuming that the evidence could have been admitted, we agree with the *Countryman I* division that the evidence had "marginal potential value." *Countryman I*, slip op. at ¶ 72.  Neither offense related to Countryman or the charged crimes.  One occurred in a different jurisdiction entirely.  And even if the relatively minor offenses had any impeachment value, mother was not a material witness.  After all, she was not a witness to the sex assault and had no personal knowledge about the assault.  True, mother testified that the alcohol swab occurred before the forensic exam, but the victim directly contradicted mother's testimony.  At bottom, this case boiled down to whether the jury believed the victim or Countryman, and mother's testimony wasn't relevant on that point.

¶ 50   Given all this, we conclude that the postconviction court properly denied this claim without a hearing.

### H.   Cumulative Ineffective Assistance of Trial Counsel

¶ 51   Countryman contends that his trial counsel's errors cumulatively deprived him of his right to effective assistance of counsel.

¶ 52 Even if we assume that the cumulative error doctrine applies to ineffective assistance of counsel claims, because we have concluded that none of Countryman's claims warrants a hearing, a cumulative error analysis is not required. *See People v. Villa*, 240 P.3d 343, 359 (Colo. App. 2009) (cumulative error analysis is required only when multiple errors have been identified).

## I. Confrontation Rights

¶ 53 Countryman doesn't challenge the postconviction court's denial of his claim that the trial court violated his confrontation rights by improperly restricting the scope of "cross-examination of key prosecution witnesses." We therefore deem that claim abandoned. *See People v. Brooks*, 250 P.3d 771, 772 (Colo. App. 2010) ("[A]ny arguments [the] defendant made in his [Rule 35(c)] motions that are not specifically reasserted on appeal are abandoned, and we therefore do not address them.").

## J. Ineffective Assistance of Appellate Counsel

¶ 54 Countryman argues that his Rule 35(c) confrontation claim was not a claim of trial court error, but rather, an ineffective assistance of appellate counsel claim. He therefore contends that the postconviction court erred by concluding otherwise.

20

¶ 55    The seven pages of Countryman's Rule 35(c) motion devoted to this claim argued that the "trial court's improper restrictions" on cross-examination violated Countryman's confrontation rights.  In the final sentence, however, the motion alleged, "Further, because appellate counsel could have and should have raised this issue on direct appeal, [Countryman's] right to effective assistance of appellate counsel was violated."

¶ 56    Even if we construe this sentence as alleging ineffective assistance of appellate counsel, we reject it as bare and conclusory.  *Duran*, ¶ 9.  To allege ineffective assistance of appellate counsel, the Rule 35(c) motion needed to show that (1) the omitted appellate issue was clearly stronger than those appealed; and (2) there is a reasonable probability that, but for counsel's errors, Countryman would have prevailed on appeal.  *People v. Long*, 126 P.3d 284, 286 (Colo. App. 2005).  The bare allegation that appellate counsel failed to assert an additional or different claim, without any comparison of that claim to the claims that counsel did assert, "does not overcome the presumption that appellate counsel's choice was the result of a

strategic election." *People v. Trujillo*, 169 P.3d 235, 239 (Colo. App. 2007).[2]

¶ 57     Thus, we conclude that Countryman was not entitled to a hearing on this claim.

### III.    Proportionality Review

¶ 58     Finally, Countryman contends the postconviction court erred by concluding that his request for a proportionality review is not cognizable under Crim P. 35(c) because it "does not pertain to ineffective assistance of counsel."  While we agree with Countryman that a proportionality claim is cognizable under Crim. P. 35(c), *Castillo*, ¶ 38, we conclude that Countryman's proportionality claim is procedurally barred.  *See Vondra*, 240 P.3d at 494 (appellate court may affirm district court's ruling on different grounds).

¶ 59     Absent certain exceptions that Countryman doesn't raise, a court must deny a claim that was either raised and resolved or could have been presented in a prior appeal.  Crim. P. 35(c)(3)(VI), (VII); *see People v. Taylor*, 2018 COA 175, ¶ 17 (The language

---

[2] To the extent Countryman develops and expands his ineffective assistance of appellate counsel claim on appeal, we don't address allegations not raised before the postconviction court.  *See People v. Rodriguez,* 914 P.2d 230, 251 (Colo. 1996).

directing a court to deny successive postconviction claims is "mandatory rather than permissive.").

¶ 60    In his request for a proportionality review, Countryman alleged that *Wells-Yates v. People*, 2019 CO 90M, "provided new guidance on proportionality litigation," and that "this dramatic change in proportionality analysis" entitled him to an extended proportionality review.  But Countryman's premise that *Wells-Yates* dramatically changed the nature of proportionality reviews isn't correct.  *See McDonald v. People*, 2024 CO 75, ¶ 22.  Thus, Countryman could have raised his proportionality claim in his direct appeal.  That's true even if he didn't raise it before the postconviction court.  *People v. Walker*, 2022 COA 15, ¶ 50 (reviewing proportionality claim first raised in a direct appeal).

¶ 61    Because Countryman could have raised his proportionality claim in his direct appeal, and because no exception applies, the postconviction court was required to deny the motion as successive.  *See* Crim. P. 35(c)(3)(VII); *see also People v. Isom*, 2015 COA 89, ¶ 32 (concluding the defendant's constitutional challenge to his indeterminate sentence was time barred and "successive because

[the defendant] could have raised it on direct appeal" but did not),

*aff'd*, 2017 CO 110.

## IV. Disposition

¶ 62 The order is affirmed.

JUDGE BROWN and JUDGE SCHOCK concur.