The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

David N. GREATHOUSE,
Defendant-Appellee.

No. 86SA80.

Supreme Court of Colorado,
En Banc.

Sept. 8, 1987.

---

Kurt P. Schulke, Dist. Atty., Robert H. Wheeler, Chief Deputy Dist. Atty., Georgetown, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Claire Levy, Jonathan Willett, Deputy State Public Defenders, Denver, for defendant-appellee.

VOLLACK, Justice.

The People bring this appeal from the district court's dismissal of the first degree murder charge against the defendant, David N. Greathouse. The district court entered a judgment of dismissal as a sanction against the People upon finding that the People had failed to preserve evidence, thereby violating the defendant's due process rights. Jurisdiction is properly before this court, and we conclude that no due process violation occurred, and thus the trial court erred in dismissing the charge.

Accordingly, we reverse and remand for reinstatement of the charge.

I.

The defendant was charged by information with murder in the first degree in the death of his wife, Sandra Linn Greathouse. Hikers found her body on August 10, 1982, near Fall River Road in Clear Creek County, Colorado. Her body was located at the base of an eighty-foot cliff. Because the circumstances surrounding her death were unknown, an autopsy was performed the following day. It revealed that the cause of death was a fall from the cliff. At the autopsy, samples of the victim's body fluids were taken: five test tubes of blood, and small samples of urine, vitreous humor, and gastric contents. Dr. Ben Galloway, the pathologist who performed the autopsy, gave two tubes of blood to the Clear Creek County sheriff's office for storage, and the remaining samples to a private laboratory, Kier Laboratories [hereinafter Kier]. At Kier, a test of the blood revealed a blood alcohol concentration of thirty milligrams percentage or .03 grams of alcohol per one hundred milliliters of blood. After Kier completed the test, it destroyed the samples pursuant to routine laboratory procedure.

On August 13, 1982, highway workers found the victim's purse, which contained a bottle of Duricef pills, an antibiotic, a bottle of Enovid, an oral contraceptive, and a receipt for Antabuse pills, a drug used in the treatment of alcoholism. Subsequent evidence later revealed that in January 1982, the victim had received treatment for substance abuse while living in Canon City, Colorado.

The defendant was not charged in the murder of his wife until May 1985. After a preliminary hearing, probable cause was found that the defendant had committed the offense charged, and the case was bound over to the district court. The defendant requested access to the samples of the victim's body fluids taken at the autopsy and received the two test tubes from the Clear Creek County sheriff's office. Roche Laboratories received the tubes for testing

on the defendant's behalf and discovered that one tube contained no blood at all and the other tube contained only two to three drops of blood. This small amount of blood was sufficient to perform a blood-alcohol test, which proved negative, but was not sufficient to test for the presence of drugs.

At a hearing on the defendant's motion to dismiss on the ground of destruction of evidence, the defendant contended, as his theory of defense, that the victim had ingested alcohol and Antabuse shortly before her death, and that the interaction of the drug and the alcohol caused her to become unsteady and fall or jump from the cliff to her death.[1] The defendant moved to dismiss the charge on the ground that the inability to test for Antabuse violated his due process rights. Dr. Galloway testified at the hearing that the .03 grams of alcohol per 100 milliliters of blood found in the victim's blood, as determined by the Kier tests, was consistent with the degenerative process which occurred during the interval between the death and the autopsy.[2]

The trial court found that the unavailability of the samples constituted the destruction of evidence by the prosecution and that the evidence was both potentially exculpatory and material. The trial court held that this constituted a denial of due process and that no other remedy was adequate except dismissal of the charge against the defendant.

On January 16, 1986, the People filed a notice of appeal in the court of appeals. The defendant filed a motion to dismiss the appeal on January 29, 1986, alleging that the court of appeals lacked jurisdiction to hear the appeal. On February 21, 1986, the court of appeals requested this court to determine whether we had jurisdiction.

We accepted jurisdiction on February 25, 1986. On May 5, 1986, the defendant filed a motion to dismiss the appeal in this court for failure of the prosecution to perfect the appeal. The defendant alleged that the notice of appeal was untimely because it was filed in the wrong court, asserting that C.A.R. 4(b)(2) required the People to file a notice of appeal in this court, and not the court of appeals. The defendant alleged that the People did not demonstrate good cause or excusable neglect for not complying with C.A.R. 4(b)(2) and seeking to transfer the case to this court and, therefore, dismissal of the appeal was warranted. We denied the defendant's motion, but granted leave to raise the timeliness of the appeal in the briefs submitted to this court.

## II.

First, we consider the timeliness of the People's appeal. The defendant asserts that this court is without jurisdiction to review the case because the People's notice of appeal was not filed in the proper court, which is a jurisdictional prerequisite.

█ C.A.R. 4(b)(2) states: "When an appeal by the state or the people is authorized by statute, the notice of appeal shall be filed in the Supreme Court within forty-five days after the entry of judgment or order appealed from." 7B C.R.S. (1984).[3] Here, the prosecution erroneously filed the notice of appeal in the court of appeals on January 16, 1986, which was within the forty-five days required under C.A.R. 4(b)(2). Therefore, the question before us is whether the People's error in filing the notice of appeal in the wrong court acts as a jurisdictional bar. This question must be answered in the negative in light of section 13–4–110(3), which states: "No case filed either

---

1. The statement of the proposed theory of defense is taken from the briefs filed in this case and the transcripts of the hearings on various motions, including the motion to dismiss.

2. Under Colorado motor vehicle laws, a person with a .05 or less grams of alcohol per 100 milliliters of blood as shown by chemical analysis is presumed to be not under the influence of intoxicating liquor and that the ability to operate a vehicle is not impaired by the consumption of alcohol. *See* § 42–4–1202(2)(a), 17

C.R.S. (1984). In addition, Dr. Ben Galloway testified that a finding of an alcohol concentration in the blood as high as .20 grams per 100 milliliters of blood could be explained as a product of natural degeneration.

3. The People's appeal of a district court's dismissal of a criminal case is authorized under section 16–12–102, 8A C.R.S. (1986), which provides in pertinent part: "The prosecution may appeal any decision of the trial court in a criminal case upon any question of law."

in the supreme court or the court of appeals shall be dismissed for having been filed in the wrong court, but shall be transferred and considered properly filed in the court which the supreme court determines has jurisdiction." 6 C.R.S. (1973). Here, the People's appeal was filed within the forty-five days set forth in C.A.R. 4(b)(2) in the court of appeals. Therefore, pursuant to section 13-4-110(3), the People's appeal was timely filed, and we have jurisdiction. *See, e.g., People v. Chastain,* 733 P.2d 1206 (Colo.1987) (appeal by defendant originally docketed in the court of appeals transferred to this court pursuant to section 13-4-110(3)); *Associated Dry Goods Corp. v. Arvada,* 197 Colo. 491, 593 P.2d 1375 (1979) (civil appeal brought in the court of appeals challenging constitutionality of a civil ordinance was transferred to this court pursuant to section 13-4-110(3)). Having determined that we have jurisdiction in this case, we now consider the substantive issue.

### III.

The People appeal from the judgment of dismissal, contending that the defendant's due process rights were not violated or, in the alternative, that if a due process violation occurred, dismissal of the charge was not warranted and was an abuse of discretion.

■ It is well established that after a request is made by an accused,[4] the prosecution's suppression of material evidence which is favorable to an accused and relates to either guilt or punishment, violates due process of law. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Accord, e.g., United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *People v. Sheppard,* 701 P.2d 49 (Colo.1985); *People ex rel. Gallagher v. District Court,* 656 P.2d 1287

(Colo.1983); *Garcia v. District Court,* 197 Colo. 38, 589 P.2d 924 (1979). In considering whether the prosecution's acts amount to a suppression of evidence, we have held that "when evidence can be collected and preserved in the performance of routine procedures by state agents, the failure to do so is tantamount to suppression of the evidence." *Gallagher,* 656 P.2d at 1291. The state is required to employ regular procedures to preserve evidence when it is reasonably foreseeable that such evidence might be favorable to the accused. *Id.; People v. Gomez,* 198 Colo. 105, 596 P.2d 1192 (1979). We have recognized that "when the police conduct scientific tests, they must preserve samples to permit the defendant to accomplish independent testing, permit the defendant's experts to monitor the police testing, or provide some other suitable means to allow the defendant to verify independently the appropriateness of the procedures and the accuracy of the results of the testing." *Gallagher,* 656 P.2d at 1292. Our prior cases have involved "a failure to preserve evidence *after* arrests had been made and the facts had stabilized." *People v. Pope,* 724 P.2d 1323, 1326 (Colo.1986) (emphasis added). In the case at bar, the state's failure to preserve evidence must be considered in the context of the ongoing investigation before the facts had stabilized.[5]

### IV.

In Colorado, the test to determine whether a due process violation has occurred has been: (1) suppression or destruction of the evidence by the prosecution; (2) the favorable character of the evidence for the defense; and (3) the materiality of the evidence. *People v. Morgan,* 199 Colo. 237, 606 P.2d 1296 (1980). Under this test, we

---

4. As noted in *People v. Sheppard,* 701 P.2d 49, 51 n. 5 (Colo.1985), we have not required a request by an accused to establish a due process violation. However, here, the defendant filed a motion for the itemization and preservation of physical evidence. In response to this request, the defendant received the two tubes of blood from the sheriff's office.

5. We have noted that the destruction of evidence in a case where there is no defendant at the time the evidence is destroyed may constitute a due process violation. *People v. Morgan,* 199 Colo. 237, 240 n. 1, 606 P.2d 1296, 1298 n. 1 (1980). However, in light of our adoption of the *Trombetta* standard, we regard the time period in which the destruction of evidence occurred as a factor to be considered. *See* Part V, *infra.*

have held that the defendant need not prove the exculpatory value of the evidence "so long as that evidence is not merely incidental to ... the defendant's defense." *Id.* at 241, 606 P.2d at 1299.

Our standard for determining the exculpatory character of evidence was developed prior to the United States Supreme Court's analysis of the state's duty to preserve evidence obtained by law enforcement officers during the investigatory stage of a case for an accused's use at trial in defense of a criminal charge. In *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the Supreme Court considered the scope of that duty under the due process clause of the fourteenth amendment and determined that it "must be limited to evidence that might be expected to play a significant role in the suspect's defense." *Id.* at 488, 104 S.Ct. at 2534. To satisfy the test of "constitutional materiality," the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. at 2534.

Since the *Trombetta* decision, we have not squarely considered whether to apply the "constitutionally material evidence" test under Colorado's due process clause. *See, e.g., People v. Pope*, 724 P.2d 1323 (Colo.1986) (continued vitality of the three-part test as a Colorado constitutional standard not ripe for review); *People v. Gann*, 724 P.2d 1318 (Colo.1986) (defendant predicated his claim solely on federal due process grounds); *People v. Sheppard*, 701 P.2d 49 (Colo.1985) (unnecessary to address adoption of *Trombetta* standard because destroyed evidence was material to defense under either *Trombetta* or Colorado standard). We regard this case to be the appropriate vehicle to consider the *Trombetta* standard since the defendant's motion to dismiss specifically alluded to state constitutional grounds, and the trial court grounded its decision on Colorado case law.

## V.

The *Trombetta* standard for determining the exculpatory value of evidence provides a more realistic way to evaluate a due process claim predicated on the state's duty to preserve evidence during the investigatory stage of a case than does the unduly expansive "not merely incidental" test adopted in our prior cases. The *Trombetta* standard correctly focuses on the state's knowledge prior to the actual loss or destruction of the evidence. Colorado's test, in contrast, turns on conjectural possibilities developed months or years after the evidence is no longer available and places an inordinate burden on the state to preserve evidence.

The first requirement of the *Trombetta* standard is that the evidence possess an exculpatory value apparent before the evidence was lost or destroyed. When viewed from a 1982 vantage point, rather than with the hindsight provided by subsequent events, it can readily be concluded that the evidence fails to satisfy this condition. The presence of small concentrations of alcohol in the victim's blood in 1982 was consistent with the decomposed state of the body prior to the autopsy. Moreover, the sheriff's officers at this time may have had some suspicion but did not have sufficient knowledge to attribute the victim's death to the criminal conduct of another. Without such knowledge, the officers should not have been expected to anticipate that the victim's body fluids might be of exculpatory value in some future but as yet unknown prosecution which was not initiated until 1985. Testimony as to the quantity of blood contained in the two tubes stored by the sheriff's department does not satisfactorily provide the time frame in which the depletion occurred, nor does it explain the reasons for the loss. The sheriff's investigator involved in the case testified that the contents of tubes containing body fluids normally "rot."[6] Finally, the defendant

---

6. Although the toxicologist from Roche Laboratories suggested two possible ways to account for the loss—(1) someone may have physically emptied the tubes: or (2) the tubes may not have been completely filled or adequately sealed—he stated that the tubes appeared to be

made no showing that at the time when the sheriff's officers or the district attorney ultimately came to believe that a crime had been committed, the victim's body fluids were then intact and their exculpatory value was then readily apparent.

It is the defendant's burden to establish that the evidence was lost or destroyed by state action. *E.g., Sheppard,* 701 P.2d 49; *Gallagher,* 656 P.2d 1287; *People v. Holloway,* 649 P.2d 318 (Colo.1982). Although, as we stated earlier, the state must employ regular procedures to preserve evidence that may foreseeably be favorable to an accused, *Gallagher,* 656 P.2d at 1291, the record here does not demonstrate that the evidence was lost or destroyed due to any action or inaction by state officials. One can only speculate on whether the state could have done anything in this case to preserve the evidence and prevent its decomposition over the three-year period from 1982, when the evidence was first obtained, to 1985, when the defendant moved for production of the evidence.

### VI.

Because the defendant has failed to establish that the evidence possessed an exculpatory value that was apparent before its loss, and because the defendant has also failed to show that sheriff's officers or other state agents could have averted the loss of the evidence, it is unnecessary to consider the second prong of *Trombetta* —whether the defendant was unable to obtain comparable evidence by other reasonably available means. Since there is no due process violation, there is no viable issue in this case concerning remedy or sanction.

The judgment of dismissal is reversed and the case remanded to the district court for trial.

adequately sealed when he received them from the sheriff's office. This testimony amounts to

nothing more than speculation as to the cause of the loss of the evidence.