The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Susana Rebeca BRAUNTHAL, Defendant–Appellee.

No. 01SA41.

Supreme Court of Colorado, En Banc.

Sept. 10, 2001.

Mark M. Myers, District Attorney, Ninth Judicial District, H. Lawson Wills, Assistant District Attorney, Aspen, CO, Attorneys for Plaintiff–Appellant.

Frederick W. Gannett, P.C., Frederick W. Gannett, Basalt, CO, Attorneys for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

In this interlocutory appeal, the People challenge the trial court's order suppressing testimony by individuals who had viewed an incriminating segment of a videotape that was subsequently destroyed. The trial court's order was based on a finding that the destruction of the videotape violated the due process rights of the defendant, Susana Rebeca Braunthal (Braunthal). The People argue that there was no due process violation because state action was not the cause of the degradation of the videotape in question and because the videotape was not exculpatory.

Braunthal argues that the destruction of the videotape infringes on her right to cross-examine the witnesses, and thus, effectively deprives her of her due process rights.

Although the People improperly brought this case as an interlocutory appeal, we have authority to exercise jurisdiction to consider this case as an original proceeding pursuant to Colorado Appellate Rule (C.A.R.) 21. We conclude that the circumstances warrant such review. As to the due process issue, we hold that there was no due process violation because the videotape was not exculpatory in nature and comparable evidence was available to Braunthal to assist in her defense. Therefore, the trial court erred in excluding the videotape evidence at issue. Accordingly, we issue a rule to show cause and make the rule absolute.

I.

On November 24, 1999, Erlinda Morehead (Morehead), a vice president at Alpine Bank, was informed that the cash drawer of Janice Rust (Rust) was "short" $4,000. Morehead first investigated by reviewing tape registers for Rust's teller station. When this investigation did not reveal anything, Morehead decided to view the videotape of activity at Rust's teller station.

Alpine Bank maintains a surveillance system that captures activity in the bank from several different locations. The system operates on a time lapse, capturing an image for a short period of time, and then sequentially moving through the eight different locations of the cameras. The eighth location is apparently inoperable. Therefore, there is a blank spot on the tape for that location. Each videotape captures seven business days of bank activity. The videotape recorded on the date of the suspected theft, November 24, 1999, and the evidence derived from the videotape, is the subject of this appeal.

For Morehead to view the videotape at Alpine Bank, it would have been necessary to shut off the surveillance system. For this reason, Morehead contacted Officer John Crowley (Crowley) of the Aspen Police Department on December 3, 1999, to ask permission to use the Aspen Police Depart-

ment's video equipment to review the contents of the videotape from November 24th. Crowley was present for some of the viewing of the videotape at that time. Because of the length of the videotape, and the bank's failure to update the time clock on the tape to reflect daylight savings time, Morehead was unable to locate any suspicious activity on the tape. Morehead left the police station with the videotape. The videotape was viewed by several bank employees over the next few days.

On either December 5, 1999, or December 6, 1999, Morehead again contacted the Aspen Police Department and indicated that she had found a segment on the tape containing suspicious activity. Accordingly, Morehead informed the Aspen Police Department that she now believed that a theft had occurred on November 24th at Alpine Bank. On December 6, 1999, detective Glen Schaffer obtained the videotape from Alpine Bank. On December 7, 1999, Crowley viewed the videotape for potential evidence of theft. Crowley discovered that there was a segment of the tape that showed Braunthal, another bank teller at Alpine Bank, at Rust's bank teller station with Braunthal's hand in the cash drawer.

On December 10, 1999, Braunthal was arrested for the alleged theft. Subsequently, on December 15, 1999, Braunthal was formally charged with one count of theft, a class 4 felony, in violation of sections 18–4–401(1)(a), (1)(b), and (1)(c), 6 C.R.S. (2000).

At a later motions hearing, Crowley testified that the December 7 viewing of the videotape revealed that the tape had deteriorated in quality from the first viewing on December 3. Crowley further testified that because of the deteriorated condition of the videotape, he made attempts to copy the tape, including the purchase of a dual deck VCR, spoke with a professional audio-visual company about copying the tape, and called the F.B.I. regarding enhancing the tape. Crowley's efforts to copy the tape were unsuccessful, however, as the copy did not produce discernible images of the Braunthal segment.[1]

Sometime in February 2000, Braunthal and her attorney attempted to view the videotape at the Aspen Police Department, but apparently were unable to see any images on the tape. It appears that, at that time, both parties to this case thought that the Braunthal segment of the videotape was completely destroyed. Braunthal contends that subsequent to the attempted viewing, bank employees were notified that the Braunthal segment was no longer viewable, and were asked to reduce their recollections of the contents of the videotape to writing. The writings, which are at issue in this case, appear to consist primarily of emails from bank employees. Braunthal contends that these writings were not made until March 2000.[2] Believing that the Braunthal segment of the videotape was no longer capable of being viewed, on March 10, 2000, Braunthal filed a motion requesting that the case be dismissed, or in the alternative, that all evidence and testimony derived from the viewing of the videotape be suppressed. At an August 7, 2000 hearing, the trial court denied both of Braunthal's requests. The trial court concluded that state action was not the cause of the destruction of the videotape and that Braunthal failed to prove that the videotape had exculpatory value.

In May 2000, the parties discovered that the videotape was, in fact, still viewable, but only on the Alpine Bank VCR. Braunthal and her attorney were able to view the videotape at that time. Some time subsequent to that viewing, a member of the Aspen Police Department was able to capture six still photographs from the Braunthal segment. According to the People, after these still photographs were produced, the videotape was returned to evidence and was not viewed again until just before the scheduled trial.

In January, 2001, the week before the scheduled trial date of January 31, 2001,

---

1. The parties dispute, and it is unclear from the record, when the videotape was actually copied. The People suggest that the tape was copied in December 1999, while Braunthal argues that the tape was copied in February 2000.

2. The record reveals that some of the writings are dated March 2000, while others do not contain dates. Thus, it is unclear when these emails were actually written.

Crowley attempted to view the videotape with a customer who was present at Rust's teller station at the approximate time of the alleged theft. According to Deputy District Attorney Wills, after Crowley viewed the tape with the customer, Crowley attempted to rewind the tape, at which time the VCR "ate" the tape.

On January 29, 2001, Braunthal filed an amended motion seeking dismissal of the case, or in the alternative, seeking suppression of all testimony by any parties that had viewed the videotape.[3] At the January 30, 2001 hearing on the amended motion to dismiss, the trial court made its ruling orally. Our understanding of the record and the court's ruling is that the trial court found that the videotape was exculpatory because it might not show what the witnesses claim that it showed, and thus, it would be useful to Braunthal to effectively cross-examine those witnesses. The trial court reasoned that the police should have copied the tape, but instead destroyed the tape while attempting to rewind it after viewing it the week prior to trial. We believe that the trial court ultimately concluded that Braunthal's due process rights had been violated because the videotape was destroyed by state action. Accordingly, the trial court suppressed all testimony by any parties alleged to have viewed the Braunthal segment of the videotape or any derivative of the segment, including conclusions, observations, and other recordations. The trial court, however, declined to dismiss the case. The People filed an interlocutory appeal to this court pursuant to C.A.R. 4.1.

## II.

### A. JURISDICTION

■ This case was brought before this court by the People as an interlocutory appeal. In order to resolve the issues presented, we must first determine whether we have jurisdiction to hear the merits of this case. We conclude that C.A.R. 4.1 does not autho-

rize this appeal. However, because of the circumstances presented in this case, we exercise our original jurisdiction pursuant to C.A.R. 21.

■ Appeals by the prosecution are governed by section 16–12–102, 6 C.R.S. (2000). In general, this section provides for specific instances in which the prosecution may file an interlocutory appeal, and also states that "the procedure to be followed in filing and prosecuting appeals shall be as provided by applicable rule of the supreme court of Colorado." *Id.* C.A.R. 4.1 provides that the People may file an interlocutory appeal from a ruling of a district court granting a motion under Crim. P. 41(e) and (g) and Crim. P. 41.1(i). *See* C.A.R. 4.1. Therefore, there are three circumstances in which a trial court's suppression order is subject to review by an interlocutory appeal. Specifically, review is proper where evidence was suppressed due to an unlawful search and seizure, an involuntary confession or admission, or an improperly ordered or insufficiently supported, nontestimonial identification. *See* Crim. P. 41(e) and (g); Crim. P. 41.1(i).

■ We have previously held that the subject matter of interlocutory appeals under C.A.R. 4.1 is extremely narrow. *People v. Morgan,* 619 P.2d 64 (Colo.1980). To this end, we have dismissed interlocutory appeals where they were not properly filed and did not seek relief under the circumstances outlined in C.A.R. 4.1. *See People v. McNulty,* 173 Colo. 491, 480 P.2d 560 (1971); *People v. Thornburg,* 173 Colo. 230, 477 P.2d 372 (1970). "Interlocutory appeals under C.A.R. 4.1 may be appealed only from adverse rulings on Crim. P. 41 motions (citing *People v. Fidler,* 175 Colo. 90, 485 P.2d 725 (1971)). Specifically, C.A.R. 4.1 is designed to review rulings made by trial courts at suppression hearings under Crim. P. 41(e) and 41(g)." *People v. Lindsey,* 660 P.2d 502, 504 (Colo. 1983). In this case, the challenged suppression of evidence was not based on an adverse

---

3. In January 2001, Braunthal also filed two motions in limine seeking to exclude Morehead's computer notes, and barring the introduction of any reference to the videotape at trial. Because the trial court granted Braunthal's request for suppression of all testimony based on the videotape, the trial court did not make any rulings on the motions in limine and the issues raised in these motions are not before us.

ruling under the specified rules of criminal procedure as enumerated in C.A.R. 4.1. Thus, the evidence suppressed by the trial court in this case is not properly subject to review by interlocutory appeal under C.A.R. 4.1.

We note that we have previously entertained interlocutory appeals in cases regarding the destruction of exculpatory evidence. *See, e.g., People v. Wyman,* 788 P.2d 1278 (Colo.1990); *People v. Morgan,* 199 Colo. 237, 606 P.2d 1296 (1980); *People v. Roblas,* 193 Colo. 496, 568 P.2d 57 (1977). *But see People ex rel. Gallagher v. Dist. Court,* 656 P.2d 1287 (Colo.1983)(reviewing a police failure to preserve evidence as an original proceeding pursuant to C.A.R. 21). In each of these cases brought as interlocutory appeals, we did not discuss the basis of our jurisdiction. However, we note that in those types of cases, as here, we could have assumed jurisdiction as an original proceeding pursuant to C.A.R. 21. However, those cases do not have precedential value for the exercise of this court's jurisdiction through interlocutory appeals in cases regarding the destruction of evidence. *See Romer v. Bd. of County Comm'rs,* 956 P.2d 566, 570 n. 4 (Colo.1998).

Although the People improperly brought this case as an interlocutory appeal, we have the ability to consider the case on its merits as an original proceeding pursuant to the Colorado Constitution and C.A.R. 21. Colo. Const. art. VI, § 3; C.A.R. 21; *People v. Young,* 814 P.2d 834, 836–39 (Colo.1991). The exercise of original jurisdiction is discretionary. *Jones v. Dist. Court,* 780 P.2d 526, 528 (Colo.1989). Original jurisdiction may be appropriate where an otherwise interlocutory ruling may have a significant impact on a party's ability to litigate the merits of a controversy. *Id.* An original proceeding can also be used "to test whether the trial court is proceeding without or in excess of its jurisdiction, or to review a serious abuse of discretion when an appellate remedy would not be adequate." *People v. Dist. Court,* 790 P.2d 332, 334–35 (Colo.1990).

In this case, the People's ability to litigate the issues has been significantly impaired by the trial court's ruling suppressing all of the testimony by witnesses who viewed the vid-

eotape, and any derivative evidence from the videotape. Moreover, appellate review of the trial court's order would be an inadequate remedy. If the People proceed to trial on the merits, notwithstanding the exclusion of the evidence, and Braunthal is acquitted, jeopardy will attach. *People v. Dist. Court,* 793 P.2d 163, 166 (Colo.1990); *People v. Dist. Court,* 664 P.2d 247, 251 (Colo.1983). Thus, although the People could appeal the trial court's order suppressing the evidence subsequent to the trial, Braunthal could not be retried due to double jeopardy considerations. Accordingly, we conclude that the exercise of original jurisdiction is appropriate under the circumstances of this case.

## B. DUE PROCESS ISSUE

The Due Process Clause of the Fourteenth Amendment mandates that the state disclose to criminal defendants favorable evidence that is material to either guilt or punishment. *See California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "In considering whether the prosecution's acts amount to a suppression of evidence, we have held that when evidence can be collected and preserved in the performance of routine procedures by state agents, the failure to do so is tantamount to suppression of the evidence." *People v. Greathouse,* 742 P.2d 334, 337 (Colo.1987). When it is reasonably foreseeable that evidence may be favorable to the accused, the prosecution must employ procedures to preserve such evidence. *Id.* However, the prosecution's duty to prevent the loss or destruction of evidence that may be favorable to the defendant is not absolute. *People v. Brown,* 574 P.2d 92, 94, 194 Colo. 553, 555 (1978).

In order to establish a due process violation for the prosecution's failure to preserve evidence, a defendant must prove that the evidence was suppressed or destroyed by state action and that the evidence was material. *Greathouse,* 742 P.2d at 337–38. In *Greathouse,* we adopted the "constitutional materiality" test outlined by the U.S. Supreme Court in *California v. Trombetta,* 467

U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413. The duty of the state to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense." *Trombetta*, 467 U.S. at 488–89, 104 S.Ct. 2528. In order to satisfy the "constitutional materiality" test, the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. 2528. Thus, under Colorado law, in order to establish a due process violation for failure to preserve exculpatory evidence, the defendant must establish that (1) the evidence was destroyed by state action; (2) the evidence possessed an exculpatory value that was apparent before it was destroyed; and (3) the defendant was unable to obtain comparable evidence by other reasonably available means. *People v. Enriquez*, 763 P.2d 1033, 1036 (Colo.1988); *Greathouse*, 742 P.2d at 338–39. All three parts of the test must be established to prove a due process violation. *Enriquez*, 763 P.2d at 1036.

The People argue that there was no due process violation in this case, and, thus, the trial court erred in suppressing the evidence. First, the People argue that it was not state action alone that destroyed the videotape. Instead, the People suggest that the viewing of the videotape by Alpine Bank employees prior to the Aspen Police Department obtaining the tape contributed to the deterioration and ultimate destruction of the Braunthal segment of the tape. The People do not dispute, however, that the tape was mutilated by the VCR just prior to trial when it was attempted to be rewound by Crowley, and suggest that the Aspen Police Department did everything possible to preserve the videotape. The People also argue that the videotape is not exculpatory, as there is nothing on the videotape that would assist in Braunthal's defense of the charges. Finally, the People argue that the still photographs produced from the videotape are sufficient comparable evidence. Thus, the People suggest that Braunthal has failed to prove that she cannot obtain comparable evidence by other reasonably available means.

In contrast, Braunthal argues that the videotape was destroyed by state action in that it was in possession of the Aspen Police Department when the Braunthal segment was ultimately destroyed. Moreover, Braunthal argues that the Aspen Police Department failed to take appropriate measures to preserve and copy the videotape from the time that they first obtained it. Braunthal also argues that the video tape is exculpatory because it potentially could be used to impeach the credibility of the witnesses' accounts of the events depicted on the videotape. Braunthal suggests that without the videotape to refute the witnesses' oral and written statements regarding what they saw on the tape, she has effectively been denied her right of confrontation of witnesses against her. Finally, although Braunthal acknowledges that the still photographs could be used to impeach the witnesses' statements, Braunthal suggests that the still photographs are insufficient to serve as comparable evidence under the due process test because they are incomplete and not in sequence.

We first note that our analysis of whether exculpatory evidence was destroyed is focused on the actual videotape, not on the evidence that was suppressed by the trial court as a sanction for its apparent finding that Braunthal's due process rights had been violated. The issue of whether Braunthal's due process rights were violated based on state action of destruction of evidence, or failure to preserve evidence, must be centered on the videotape alone because the videotape was the only evidence that was destroyed. Moreover, the other evidence, specifically, the still photographs and the testimony of witnesses who viewed the tape, are presumably only being offered as evidence because the tape was destroyed. Had the videotape not been destroyed, there would be no need for the parties to offer still photographs to show what the tape captured, or testimony of witnesses to describe the events on the tape. Thus, the focus of our analysis is whether the destruction of the videotape itself, considering its potential value to Braunthal, resulted in a due process violation.

With respect to the first prong of the test, it is the defendant's burden to prove that the evidence was lost or destroyed by state action. *Greathouse*, 742 P.2d at 339. Although the issue of state action was not specifically discussed at the January 30 hearing, and was not directly addressed in the trial court's January 30 ruling, we conclude that there is sufficient evidence to support the trial court's finding of state action.

The People argue that the viewing of the videotape by Alpine Bank employees prior to the tape being turned over to the Aspen Police Department contributed to its ultimate degradation, and thus, it was not state action alone that destroyed the videotape. This argument focuses on the quality of the videotape prior to its ultimate destruction. Regardless of the condition of the videotape when it was provided to the Aspen Police Department, the record indicates, and the parties do not dispute, that the final viewing of the videotape and the subsequent attempt to rewind it occurred at the Aspen Police Department. It was these actions, by Crowley, at the Aspen Police Department, that caused the ultimate destruction of the relevant section of the videotape. Thus, the record supports a finding of state action in the destruction of the videotape in this case.

We turn now to the second prong, which requires that the defendant establish that the evidence had exculpatory value apparent before its destruction. *Enriquez*, 763 P.2d at 1036. The videotape undeniably showed Braunthal at Rust's teller station, at a time when Rust was not present at her station, in violation of bank policy. Braunthal argues that the tape has exculpatory value because it does not show Braunthal actually taking cash from Rust's teller drawer. Rather, it merely shows Braunthal at Rust's teller station with her hand in or near Rust's teller drawer. Incriminating evidence is not exculpatory because it is not alone conclusive of criminal conduct. Although there could be some other explanation for the position of Braunthal's hand by the cash drawer, the videotape did not suggest that explanation.

Further, the parties dispute whether the tape actually showed Braunthal's hand in Rust's teller drawer. According to the statements of the witnesses in the record, the videotape showed that Braunthal's hand was in Rust's teller drawer. However, Braunthal argues that the videotape actually only showed that her hand was in the vicinity of Rust's teller drawer, not actually in the drawer. Regardless of the parties' arguments, the record reflects that the videotape showed Braunthal in the vicinity of Rust's teller station, with Braunthal's hand at or near Rust's teller drawer.

While it is true that this factual dispute might be resolved if it were possible to view the Braunthal segment of the videotape, the photographic stills obtained from the tape include a photograph of this segment. Thus, comparable evidence to the images that were contained on the videotape is available for the jury to consider, and for cross-examination of witnesses who viewed the tape. *People v. Rodriguez*, 914 P.2d 230, 270–71 (Colo. 1996)(no due process violation where evidence in the form of photographs destroyed because videotape evidence of same images available).

Moreover, there was no evidence offered to the trial court as to how the still photographs obtained by the police were not a complete set, or were out of sequence. On the contrary, Braunthal's counsel admitted to the trial court at the January 30, 2001 hearing that had he obtained still photographs through his own means, he would have been limited to choices of still photographs depicting the same segments and from the same angles as the still photographs obtained by the police. Finally, Braunthal offered no evidence that the photographic stills did not accurately reflect the content of the videotape. *See id.* (where no evidence offered to question accuracy of videotape depicting same images as in photographs, videotape sufficient to meet comparable evidence standards).

Braunthal also argues that the destruction of the videotape infringes on her ability to effectively cross-examine the witnesses regarding their statements relating to what they saw on the videotape. It is true that exculpatory evidence includes evidence which bears on the credibility of a witness the prosecution intends to call at trial. *Peo-*

*ple v. Dist. Court,* 793 P.2d at 166. However, in this case, there is comparable evidence that can adequately serve the same purpose as the videotape. *Trombetta,* 467 U.S. at 489, 104 S.Ct. 2528; *Rodriguez,* 914 P.2d at 270–71. Since we have no reason to believe that the still photographs obtained from the videotape do not accurately reflect its contents, the still photographs could be used by Braunthal to cross-examine the witnesses regarding their statements relating to what they saw on the videotape. Thus, the still photographs are comparable evidence that can serve the same purpose as the videotape. Accordingly, there is no apparent exculpatory value in the videotape itself that is not also contained in the still photographs obtained from the videotape.

In this case, Braunthal does not argue, and the record does not support, that the prosecution deliberately destroyed the videotape. Conversely, the record suggests that, although unsuccessful in their attempts, the police officers involved in the case made genuine efforts to copy the tape and otherwise preserve the images in the relevant sections. As we have stated, the prosecutor's duty to prevent the loss or destruction of evidence is not absolute. *Brown,* 194 Colo. at 555, 574 P.2d at 94. In *Brown,* we held that testimony about a destroyed wick that was necessary in order to support a charge of unlawful use of an incendiary device was improperly suppressed because the investigator made a good faith effort to preserve the evidence and was available to testify regarding the nature of the evidence obtained prior to the wick's destruction. *Id.* at 556, 574 P.2d at 94. Likewise, in this case, still photographs of the Braunthal segment were obtained by the Aspen Police Department prior to that segment of the videotape being degraded. Moreover, witnesses who viewed the videotape are available to testify as to the nature of the contents of the Braunthal segment of the tape.

As we have previously stated, all three prongs of the test must be satisfied in order for Braunthal to establish a due process violation. *Enriquez,* 763 P.2d at 1036. Braunthal has not met this burden, as the videotape was not exculpatory. Moreover, there is comparable evidence available to Braunthal. Thus, there was no due process violation. Because we hold that there was no due process violation, we need not address the alternative argument raised by the parties that the trial court abused its discretion in suppressing the evidence as a sanction for the due process violation.

### III.

In summary, we hold that the videotape evidence at issue is not exculpatory, and that, even though the videotape cannot be used at trial due to its deteriorated condition, comparable evidence is available to Braunthal. Thus, Braunthal has failed to meet her burden of establishing a due process violation. We conclude that the trial court erred in finding that Braunthal's due process rights were violated, and thus, erred in suppressing the testimony of the witnesses who viewed the videotape. Accordingly, we issue a rule to show cause and make the rule absolute. We also remand to the trial court for further proceedings consistent with this opinion. We note that our conclusion that there was no due process violation for destruction of evidence does not address whether the videotape, the still photographs, or the testimony of witnesses who viewed the videotape are admissible at trial under the rules of evidence. We cannot reach the issues raised by Braunthal's motions in limine that were not resolved by the trial court.