**In re PEOPLE of the State of Colorado, Plaintiff**

**v.**

**Matthew Gene WARTENA, Defendant.**

**No. 06SA232.**

Supreme Court of Colorado, En Banc.

April 16, 2007.

Scott W. Storey, District Attorney, 1st Judicial District, Donna Skinner Reed, Chief Appellate Deputy District Attorney, Golden, Colorado, Attorneys for Plaintiff.

Douglas K. Wilson, State Public Defender, Nancy Holton, Deputy Public Defender, Golden, Colorado, Attorneys for Defendant.

Justice MARTINEZ delivered the Opinion of the Court.

In this C.A.R. 21 proceeding, we hold that the trial court abused its discretion when it committed to ordering suppression of DNA results for tests that had not yet been conducted if the CBI refused to permit videotaping and the district attorney refused to pay the expense of a defense expert. Thus, we vacate the ruling.

### I. Facts and Procedural History

The defendant, Matthew Wartena ("Wartena"), is accused of eleven felonies, including extreme indifference murder and attempted murder after deliberation, stemming from a high-speed pursuit. At a preliminary hearing, police officers testified that Wartena and an accomplice were seen stealing a Honda Civic from a residential street. A passing motorist who witnessed the alleged theft followed the Civic until it pulled over. The Civic's passenger, purportedly Wartena, fired a shotgun at the trailing motorist before speeding away. Moments later, when the Civic attempted to merge onto southbound I-270 at Commerce City, it swerved across traffic, causing a multi-car accident that killed one motorist and seriously injured two others.

In April 2006, the Colorado Bureau of Investigation ("CBI") notified Wartena's counsel that tests would be performed on the handle of a shotgun found at the accident scene. The CBI further informed Wartena that these tests likely would destroy the sample and not permit subsequent defense testing. It is unclear from the record whether the CBI offered Wartena the opportunity to hire an expert to be present for the testing or whether the defense requested that the CBI delay testing while it considered its alternatives.

After receiving notice of possible destructive testing, Wartena asked the CBI to allow

his attorney or an investigator to videotape the testing procedures, to be reviewed by his trial expert at a later date. The CBI refused this request. In refusing, the prosecution team referred Wartena to the CBI evidence manual, which states that "[p]hotographic and/or video recording of any in-progress analytical procedure is prohibited." *Colo. Bureau of Investigation Forensic Lab. Evidence Manual*, Version 1.6, 22 (Apr.2003).

The parties then involved the trial court in a discussion to explore possible alternatives that would allow Wartena the opportunity to observe the test. Defense counsel urged that the court either require the CBI to allow the defense to videotape the test or order the prosecution to pay the cost of a defense expert. The prosecution challenged both options.

At a subsequent proceeding, the court heard testimony from a CBI representative as to the reasons for its protocol prohibiting videotaping. The prosecution argued that its only obligation to the defense regarding the trace evidence was to allow a defense expert to be present during testing. Defense counsel countered that an expert would cost $2,000 per day plus expenses and given that the test would take three days to complete, the total expense would likely top $7,000. Conversely, videotaping could be done unobtrusively and for far less than $7,000. The prosecution then argued that the public defender's office had an appropriation from the General Assembly for expenses like expert witnesses. The public defender countered that "we call and beg for experts ... [we have] funding problems." In considering the available options, and in light of the CBI's policy, the court asked the prosecution whether it would contribute some portion of the cost arising from the CBI's videotaping prohibition. The prosecution refused. The prosecution also refused to ask the CBI to allow videotaping of the tests.

The trial court then entered an order stating that it would suppress the results of the DNA test unless the prosecution paid the costs of the defense expert in excess of $1,000. Discussing the order, the judge stated in part:

Now, if the prosecution, whether through your office, public donations, or any other way comes up with the money to reimburse this expert, then I will admit the evidence as long as you have made available to the defense the opportunity to have this done at no expense to the defendant or, for that matter, at an expense that doesn't exceed a thousand dollars, because it seems me that at least the first time that's what it would cost.

But absent the prosecution coming up with some method where the defense can exercise this constitutional right for a cost that does not exceed a thousand dollars, and absent the Colorado Bureau of Investigation being willing to participate in the development of a protocol that permits videotaping of this extraction of DNA material without risks of contamination or disruption, then it is likely that the evidence obtained will not be admitted in this court because it will be my view that the defendant's constitutional right to have this testing reasonably observed will have been violated.

The prosecution then sought to clarify the court's ruling by asking, "If we do this testing [with] no videotaping, ... is this court going to preclude us from putting that evidence in at trial?" The court replied, "It sounds like I probably am." The court continued, "Oh, you want a 'yes' or 'no'?" The prosecutor said, "Yes, please." The court then responded, "Yes."

## II. Analysis

■ We turn to the substance of the court's commitment to suppress the test results. The prosecution argues, and we agree, that the General Assembly has largely codified the applicable constitutional considerations pertaining to destructive testing. § 16–3–309, C.R.S. (2006). The statute mandates that the trial court take account of various factors when considering whether to suppress test results if the testing will not leave a sufficient sample for independent analysis.[1]

---

1. Section 16–3–309 states in part:

(1) When evidence is seized in so small a

Section 16–3–309 leaves for the court the determination of admissibility based on the reasonableness of the prosecution's actions. The statute establishes a good faith standard of prosecutorial conduct requiring that the state seek to preserve evidence where possible and act reasonably in destroying evidence where necessary. If the court determines that it was foreseeable that test results might aid the defendant, the statute mandates that the court consider the state's choice in tests, whether the state should have kept a photographic record, and whether the state should have preserved test samples for later analysis. § 16–3–309(2). Alternatively, if, after collecting the evidence, the state has reason to suspect that the sample will be destroyed during testing, the state has the duty to contact the defendant so that his expert may be present during testing. § 16–3–309(2)(g).

The touchstone of the statute is the reasonableness of the state's conduct. Thus, when the sample is destroyed the court may be asked to suppress the test results as a sanction for unreasonable state conduct. Under these circumstances, the statute requires that the court consider whether the state performed the testing in good faith and

gave the defendant an opportunity to have an expert present during destructive testing. *See People v. Brown,* 194 Colo. 553, 555, 574 P.2d 92, 94 (1978) (when the state acts unreasonably in destroying evidence, the court, in its role of guarding the preservation of evidence, may impose an appropriate sanction). An order suppressing results prior to testing could only be based on possible future conduct. Thus, when it commits to ordering test results suppressed before evidence has been destroyed in testing the court acts outside its discretion because it is in no position to assess the reasonableness of the prosecution's future actions.

■ Instead of deciding whether evidence will be suppressed, the court's role prior to testing is to oversee the preservation of evidence. The authority of the court to supervise the preservation of evidence originates in the court's role to protect the "civilized standards of procedure and evidence." *McNabb v. United States,* 318 U.S. 332, 340, 63 S.Ct. 608, 87 L.Ed. 819 (1943).[2] The trial courts' supervisory role extends to remedies when addressing a failure to preserve material evidence. *United States v. Valenzuela–*

quantity or unstable condition that qualitative laboratory testing will not leave a sufficient quantity of the evidence for independent analysis by the defendant's expert and when a state agent, in the regular performance of his duties, can reasonably foresee that the evidence might be favorable to the defendant, the trial court shall not suppress the prosecution's evidence if the court determines that the *testing was performed in good faith and in accordance with regular procedures designed to preserve the evidence which might have been favorable to the defendant.*
(2) The trial court shall consider the following factors in determining, pursuant to subsection (1) of this section, whether the state has met its obligation to preserve the evidence:
(a) Whether or not a suspect has been identified and apprehended and whether or not the suspect has retained counsel or has had counsel appointed for him at the time of testing;
(b) Whether the state should have used an available test method more likely to preserve the results of seized evidence;
(c) *Whether, when the test results are susceptible to subjective interpretation, the state should have photographed or otherwise documented the test results as evidence;*
(d) Whether the state should have preserved the used test samples;

(e) Whether it was necessary for the state agency to conduct quantitative analysis of the evidence;
(f) Whether there is a sufficient sample for the defendant's expert to utilize for analysis and the suspect or defendant has made a specific request to preserve such sample;
(g) If paragraph (f) of this subsection (2) cannot be complied with, in view of the small amount of evidence, or when the state's duty to preserve the evidence would otherwise be enhanced, *whether it was reasonable for the state to have contacted the defendant to determine if he wished his expert to be present during the testing.*
§ 16–3–309 (emphasis added).

2.  The *McNabb* court also stated, "Such standards are not satisfied merely by observance of those minimal historic safeguards for securing trial by reason which are summarized as 'due process of law' and below which we reach what is really trial by force." *McNabb,* 318 U.S. at 340, 63 S.Ct. 608. (McNabb's statement of the court's supervisory role has been relied upon, albeit in different contexts. *See United States v. Young,* 470 U.S. 1, 24, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (Brennan, J., concurring); *see also United States v. Hammad,* 846 F.2d 854, 860–61 (2d Cir.1988)).

*Bernal,* 458 U.S. 858, 870, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); *see also, California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).[3]

█ Acting to avoid or mitigate a failure to preserve evidence, the court may order that evidence cannot be destroyed, or may permit the consumptive testing of evidence. *Brown,* 574 P.2d at 94; *see also People v. Braunthal,* 31 P.3d 167, 174 (Colo.2001). Except in unusual circumstances, this authority does not extend to dictating procedures to a particular laboratory or ordering the prosecution to pay for a defense expert. Nonetheless, the court may exercise its authority over the evidence by prohibiting testing that does not comply with procedures adopted by the court to permit independent evaluation of evidence.

We have not previously addressed whether, in the exercise of its authority to set appropriate procedures, the court may require videotaping of testing procedures as a condition of permitting consumptive testing. The American Bar Association recently addressed the duty to preserve evidence in consumptive testing situations, noting in the Criminal Justice Section Standards on DNA Evidence that courts should consider ordering procedures such as videotaping that would allow for independent evaluation.[4] We agree with the recommendation of the American Bar Association and adopt Standard

3.4(e).[5] However, we are unable to apply this Standard given the record before us.

The trial court correctly recognized that it did not have the authority to dictate procedures to the CBI or to order the prosecution to pay the expense of a defense expert when it specifically stated it was not making such orders.[6] After recognizing this limitation, the trial court did not assert its authority over the evidence itself and address whether it would permit the evidence to be destroyed in testing or outline the procedures it found appropriate to permit independent analysis as a condition of permitting consumptive testing. Moreover, the trial court did not make findings about the appropriateness of videotaping as a condition of permitting consumptive testing. Although the court did entertain testimony from the CBI about videotaping, it did not make findings and conclusions about the CBI's objections to videotaping and whether videotaping should be part of the testing procedures in the circumstances of this particular case. Instead, the trial court prematurely focused on sanctions for unreasonable conduct in failing to preserve evidence.

While the court's effort to determine how a suppression issue may be avoided was appropriate, the court's commitment to a future ruling was an abuse of discretion. Because the court's consideration of sanctions was premature, it could not consider the factors

3. The court's authority over evidence is broad. For instance, C.R.C.P. Rule 16 gives the court authority to require the disclosure of information that tends to negate guilt or reduce punishment. This authority extends to material and information in the possession of anyone who has participated in the investigation or evaluation of the case and who reports to the prosecution. Trial courts exercise authority over this possible evidence by issuing subpoenas duces tecum or ordering the production of evidence. Courts in various jurisdictions have found that rules similar to C.R.C.P. Rule 16 do not prevent the court from making more extensive orders. *United States v. Fletcher,* 74 F.3d 49, 54 (4th Cir.1996). The court's authority is not constrained to those areas specified in the rules. *Peek v. United States,* 321 F.2d 934, 942 (9th Cir.1963).

4. This Standard reads in full:

If a motion objecting to consumptive testing is filed, the court should consider ordering procedures that would permit an independent evalu-

ation of the analysis, including but not limited to the presence of an expert representing the moving party during evidence preparation and testing, and videotaping or photographing the preparation and testing.
*A.B.A. Criminal Justice Section Standards on DNA Evidence,* Standard 3.4(e) (2006).

5. We have previously adopted American Bar Association criminal standards. In *People v. Jones,* 677 P.2d 383 (Colo.App.1983), we adopted Standard 12–2.31, which prevents criminal defendants from asserting speedy trial while confined in a hospital or mental institution. In *Cordova v. People,* 817 P.2d 66 (Colo.1991), we adopted ABA criminal Standard 7–6.8, which sets out jury instructions for insanity claims.

6. Any further discussion of the court's authority to order the prosecution to pay defense expenses or to order the CBI to permit videotaping misses the mark as the court expressly declined to enter such orders.

set forth in section 16–3–309. First, there was no test. Second, no evidence was destroyed. Third, the results were not offered into evidence. Finally, no determination was made that the evidence might be favorable to the defendant.

The CBI has not destroyed evidence and the prosecution has not acted unreasonably; the defendant's rights have not been violated. Therefore, a commitment to suppress unknown results of testing that has not yet been conducted based on circumstances that might develop exceeds the court's authority and is an abuse of discretion.

### III. Conclusion

We make the rule absolute.

Justice COATS concurs in judgment only, and Justice RICE and Justice EID join in the concurrence.

Justice COATS, concurring in the judgment only.

While I would also vacate the trial court's order, I neither join the majority opinion nor pretend to comprehend it. For my part, I believe that an order requiring the CBI to videotape its in-process testing or requiring the district attorney to finance a defense expert would have exceeded the trial court's authority; and I consider it an abuse of discretion to threaten the exclusion of evidence for failing to do what the court lacks the authority to order directly. The majority, on the other hand, without serious explanation or debate, imports from outside the jurisdiction an advisory standard authorizing courts to order the videotaping of executive branch investigations, despite disapproving as premature such an order in this case,

apparently because no evidence had yet been consumed.

Based on little more than the representation of the defendant's lawyer that the cost of producing an expert to observe the CBI's testing would be excessive for the public defender's budget, the district court in this case ordered that all prosecution DNA test results be excluded unless the defendant were permitted to videotape the testing process itself or the district attorney paid the difference between the cost of videotaping and the cost of contemporaneous observation by a defense expert. The sole testimony before the court on this issue emphatically indicated that any attempt to videotape DNA testing would have deleterious consequences for the testing process; could not be done effectively in any event; and was therefore prohibited by CBI testing protocols. Representations of counsel confirmed that attempts to videotape DNA testing are similarly prohibited by the other public and private testing agencies queried.

Nevertheless, for reasons that seem less than clear, the trial court determined that in light of the costs of expert observation during the actual testing process, it would be unreasonable to prohibit videotaping for subsequent expert observation; and it further determined "from just picking up the paper on Sunday morning and looking at the ads," that the procedure could be videotaped for a cost of $1,000.[1] In response to prosecution insistence that its budget for state-mandated costs had not been legislatively authorized for defense witness expenses, the court made clear that it did not care where the funding came from, as long as the defense was not required to bear the expense.[2] According to the district court's order, the evidence would simply be held inadmissible unless testing

---

1. Assuming that videotaping could be accomplished without imposing additional costs in the testing process itself; and assuming that the purpose of videotaping the testing process would actually be to eliminate the costs of having a defense expert physically present during testing, rather than to create doubt in the minds of the jurors in some way other than by challenging the validity of the DNA test results; the appropriate measurement of savings would seem to be the difference between the cost of having the expert physically present to observe and the cost of

videotaping the testing process plus the cost of paying for the expert's time to observe the testing on videotape.

2. "Your office can pay for it. You can take up a collection among the friends of the district attorney to pay for it. You can get your friends in the legislature to get a special provision passed in the law that gets the general fund to pay for it. I don't care who pays for it. I just care who doesn't."

were videotaped or defense expenses were covered in some way other than from the public defender's budget.

Although it does so without explanation, even the majority appears to agree that the trial court would have exceeded its authority by ordering the prosecution to pay for a defense expert. By statute, court costs (including expert witness fees) incurred both by indigent defendants and the state in prosecuting them, must be borne by the state, rather than the local governments funding the district attorneys of the state. *See* §§ 13–3–104, 16–18–101, 18–1.3–701(2), C.R.S. (2006). Furthermore, the general assembly has provided a funding mechanism to fulfill the state's obligation in this regard, assigning the responsibility for seeking appropriations to cover their own mandated costs to the district attorneys, *see* ch. 399, sec. 1, 2000 Colo. Sess. Laws 2195, 2202, 2210 n. 133, and the responsibility for seeking appropriations to cover the mandated costs of indigent defendants to the public defender and alternate defense counsel. Ch. 399, sec. 1, 2000 Colo. Sess. Laws 2195, 2206 (Public Defender—Mandated Costs and Alternative Defense Counsel—Mandated Costs).

The record does not even remotely suggest that funds already appropriated to the public defender would have been insufficient to pay for a competent expert to observe in this case, much less that the legislature would have denied a supplemental appropriation, had one been necessary. In fact, however, the trial court did not find the defendant unable to pay for an expert or in any way condition its ultimatum on the availability of public funding for that purpose. Instead, the court simply disapproved of the CBI's refusal to permit videotaping as an alternative to contemporaneous observation by a defense expert, and it imposed a financial disincentive on the prosecution as a means of bludgeoning the CBI into changing its internal operating procedures. In doing so, I believe the trial court abused its discretion in a host of ways and for a host of reasons, not least because the defendant had no right, constitutional or otherwise, to demand that the state submit its internal operations to videotaping in lieu

of permitting a defense expert to be present and observe consumptive testing in person.

Prior to the United States Supreme Court's decision in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), we had construed the Due Process Clause to impose a duty upon the state to preserve discoverable evidence whenever it "might" be "favorable" to an accused. *See Garcia v. Dist. Court*, 197 Colo. 38, 46, 589 P.2d 924, 930 (1979). In express reliance on that standard, we set out various factors to be considered in evaluating compliance with the state's obligation to preserve evidence subject to testing, including whether the state had permitted the defense to observe destructive or consumptive testing. *See People v. Gomez*, 198 Colo. 105, 112, 596 P.2d 1192, 1197 (1979).

However, in *Trombetta*, 467 U.S. at 485, 104 S.Ct. 2528, and subsequently in *Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the United States Supreme Court made clear that a defendant's constitutional right to potentially exculpatory evidence is violated by prosecutorial destruction only if the exculpatory value of the evidence was apparent prior to its destruction and the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means; or if the evidence were actually destroyed by the prosecution in bad faith. Subsequently, in *People v. Greathouse*, we acknowledged that the due process prohibition against prosecutorial destruction of potentially exculpatory evidence, as articulated by the Supreme Court itself, was much narrower than our prior jurisprudence had anticipated, and we expressly declined to find a broader protection in the state constitution. 742 P.2d 334, 338–39 (Colo.1987); *see also People v. Wyman*, 788 P.2d 1278, 1279–80 (Colo.1990).

Since the United States Supreme Court has clarified the due process materiality standard for evidence not preserved by the prosecution, federal and state courts alike have concluded that the Due Process Clause places no constraints on the good faith consumptive or destructive testing of evidence by the prosecution. *See United States v.*

*Stevens,* 935 F.2d 1380 (3d Cir.1991) (although serological test of small semen sample destroyed the sample, relief not warranted absent evidence of bad faith); *United States v. Williams,* No. 06–50078, 2006 WL 1476021 (W.D.La. May 23, 2006) (government may conduct DNA testing on sample taken from gun at crime scene, even where lab would need to completely destroy the DNA sample); *see also Garrett v. Lynaugh,* 842 F.2d 113 (5th Cir.1988); *Carlson v. Minnesota,* 945 F.2d 1026 (8th Cir.1991); *McDonald v. State,* 952 So.2d 484 (Fla. 2006); *Smith v. State,* 270 Ga. 68, 508 S.E.2d 145 (1998); *Lee v. State,* 327 Ark. 692, 942 S.W.2d 231 (1997).

As the majority notes, the Colorado General Assembly has separately addressed the matter of consumptive testing by statute. *See* § 16–3–309, C.R.S. (2006). Although its statute was adopted before the constitutional underpinnings of *Gomez* had been undermined in *Greathouse,* and therefore it erroneously presumes a constitutional duty for the prosecution to preserve evidence whenever it "might" be favorable to an accused, it in no way purports to extend a defendant's rights or expand, beyond the dictates of due process, the discretion of courts to suppress the state's evidence. In fact, rather than granting courts further authority to suppress, as the majority implies, the statute expressly bars the suppression of any results from testing that was performed in good faith and in accordance with regular procedures designed to preserve evidence that might have been favorable to the defendant.[3]

Even if the statute could, however, be legitimately construed to affirmatively authorize suppression for failure of the prosecution to comply with its guidelines, it could offer no support for the defendant's demand to videotape the testing procedure. Along with techniques likely to preserve the test results themselves for later comparison, like the techniques used in DNA testing, which pre-serve a record of images for comparison, the statute simply requires that in cases involving samples too small to be preserved for retesting by the defense, courts consider the reasonableness of contacting the defendant to make available his expert during testing. Far from authorizing the suppression of evidence for failure to comply with a demand to videotape the testing process itself or, for that matter, make any other accommodations a trial court might consider reasonable, the statute specifies precisely what the state must do to comply with its obligation. And observation of the testing process by a defense expert is expressly permitted by the CBI's operating procedures.

Nevertheless, by adopting wholesale a provision of the American Bar Association Criminal Justice Standards on DNA Evidence, the majority would authorize trial courts to order the videotaping of DNA testing and prohibit testing that does not comply with the procedures they have ordered. *See* maj. op. at 472–73. While I would object to this kind of legislating from the bench in any event, I find it particularly troubling when done, as the majority does here, virtually without debate or justification; in an area already regulated by the legislature; and in the very act of disapproving the trial court's order for other reasons. In fact, I am more than a little confused by the majority's adoption of a standard authorizing orders for the videotaping of DNA tests and its simultaneous disapproval of such an order before testing has actually occurred because the sample has not yet been consumed.

Whatever the majority may intend by ultimately disapproving the timing of the trial court's ultimatum in this particular case, by mischaracterizing the defendant's right to the preservation of any evidence that *might* be exculpatory, and as a result, overstating a trial court's discretion to vindicate that right, the majority encourages more orders of the

---

3. Section 16–3–309, C.R.S. (2006) (Admissibility of laboratory test results):

(1) When evidence is seized in so small a quantity or unstable condition that qualitative laboratory testing will not leave a sufficient quantity of the evidence for independent analysis by the defendant's expert and when a state agent, in the regular performance of his duties, can reasonably foresee that the evidence might be favorable to the defendant, *the trial court shall not suppress the prosecution's evidence if* the court determines that the testing was performed in good faith and in accordance with regular procedures designed to preserve the evidence which might have been favorable to the defendant. (emphasis added).

kind that forced the prosecutor to petition in the first place. By simply treating as premature the trial court's resolution of the matter in advance of actual consumptive testing, the majority leaves unaddressed the question whether, and according to what criteria, the state's failure to comply with a defense request to videotape consumptive testing may later be adjudged a failure to preserve potentially exculpatory evidence, subjecting positive test results to possible exclusion.

In my view, the district court's order in this case is a blatant invasion of both executive and legislative branch prerogatives. It threatens monetary sanctions as a means of forcing the CBI to modify its internal operating procedures, even though they do not amount to a discovery violation, contemptuous conduct, or any infringement on the constitutional rights of the accused. Similarly, the court's ultimatum is nothing less than an unjustifiable interference with a rational legislative plan to provide adequate funding for the protection of the constitutional rights of indigent criminal defendants. Should the legislature come to believe the state laboratory is wasting public resources, it is more than capable of rectifying that situation. Whatever the majority may imply, I do not consider it within the discretion of trial courts to countermand legislative choices unless they are in fact unconstitutional.

I therefore concur only in the judgment of the court, making the rule absolute.

I am authorized to state that JUSTICE RICE and JUSTICE EID join in this concurrence.